JUBB *v.* FORD ET AL.

[No. 139, September Term, 1959.]

*Decided February 18, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND and HORNEY, JJ.

*W. Lee Harrison* and *Richard C. Murray,* with whom was *Frank E. Cicone,* on the brief, for appellant.

*Palmer R. Nickerson* for appellee, John Robert Salzman; *Clater W. Smith,* with whom were *Paul E. Burke, Jr.* and *Smith, Somerville & Case,* on the brief, for appellee, East Coast Timber Co., Inc.

No brief and no appearance for appellee, Charles E. Ford.

HAMMOND, J., delivered the opinion of the Court.

In this drama of colliding motor vehicles the time was early afternoon on a rainy January day and the scene, the south-bound roadway of the dual Ritchie Highway at its intersection with Hamburg Street near Pasadena in Anne Arundel County. Stopped to discharge a passenger in the slow lane was a small bus or carry-all (painted yellow, and bearing the words "School Bus" on its upper rear but not equipped with

flashing red lights fore and aft), in which its owner Eckhart Jubb caused to be transported seven mentally retarded children to and from school, under contract with the Anne Arundel County School Board. Standing by the bus was Charles E. Ford, father of the girl who was to get off. Some six feet behind the bus, in the fast lane, was the Cadillac of John Robert Salzman, which would have come to a full stop in another several feet. The heavy in the drama was a tractor-trailer owned by East Coast Timber Co., Inc., which crashed into the rears of the Cadillac and the bus, causing injury to various people including Ford. He sued Jubb, Salzman and East Coast. The jury gave Ford a verdict against Jubb and East Coast and found for defendant Salzman. Of the four principal actors, only Jubb has pressed an appeal, claiming primarily that his timely motions for a directed verdict and judgment notwithstanding the verdict should have been granted. Jubb and East Coast agree that the judgment in Salzman's favor should stand, and East Coast, in effect, concedes that it was negligent. Apparently it is immaterial to Ford whether his judgment is paid by one or by two. There remains to be decided on the appeal only the question as to whether there was evidence from which a jury could find Jubb to have been negligent.

The drama began when Salzman, who was driving to Annapolis at forty or forty-five miles an hour, saw the Jubb carry-all some eight hundred to a thousand feet ahead of him in the slow lane and noticed that he was gaining on it. A look in the rear view mirror disclosed nothing to prevent him from moving over into the fast lane, and he did so, intending to pass the carry-all. Once in the fast lane, he noticed the vehicle ahead had stopped and at the same time "it just registered on" him that it was a school bus. After he saw this, he started to slow down and make "an ordinary stop" with his foot brake. When he was about six feet to the rear of the carry-all in the left-hand lane, at a point when he would have come to a complete stop within another two or three feet, he said, he was struck from the rear without warning.

The driver of the tractor-trailer could not be found to testify at the trial. By agreement his statement in the traffic

court was read to the jury. He said he had been following the Cadillac for approximately three-quarters of a mile, that he never saw the school bus or anything other than the Cadillac in front of him until the Cadillac pulled out into the left-hand lane and that after it did so, he saw this yellow vehicle "sitting" there, and as he followed the Cadillac into the fast lane, he thought the yellow vehicle was a State Roads outfit and that the Cadillac was going on by. Then he noticed the Cadillac slow down and applied his brakes. As a result, he says: "* * * the tractor-trailer jackknifed and I started sliding. That's when I slid into it. I didn't notice it was a school bus until my tractor was already sliding. The vehicle that turned out to be a school bus didn't have no red flashing lights on whatever * * * The road was very slick."

The evidence of Ford and the driver of the school bus was to the effect that the bus had come to a complete stop and had been standing long enough for the driver to open the door and to permit the child who was getting off to arise from her seat in the rear and walk halfway through the bus before it was struck.

Jubb argues that his vehicle was not required to have flashing red lights and, in any event, their absence was not a proximate cause of the accident.

Code (1957), Art. 66½, Sec. 255, defines a school bus as a motor vehicle "having a seating capacity of ten (10) or more persons and transporting children, students, or teachers to and from schools * * *". Section 257 provides that every school bus, whether purchased before or after 1949, shall have stop signals visible both to the front and rear and in addition be equipped with two flashing type "red stop lights" on top in the front and on top in the rear, which are to be lighted and operating "at all times" while the bus is loading or discharging school children but at no other time. Section 259 requires drivers of vehicles on highways outside incorporated towns of five thousand or more people, upon approaching or overtaking a school bus stopped on the highway for the purpose of receiving or discharging any school child, to "come to a full stop at least ten (10) feet from such school bus"

and remain standing until the children are received or discharged and the bus has started.

Section 260 provides that the stop required of drivers by Sec. 259 need not be made unless "the school bus shall be equipped with the school bus signs and stop signals and painted in the color scheme as prescribed in this article * * *".

We think it clear that the bus was not a school bus within the definition of the statute. There was no credible or probative evidence that its carrying capacity was greater than eight, that is, seven children and the driver. Unless it were a school bus (or other authorized vehicle), it would violate the law if it used flashing red signals. Code (1957), Art. 66½, Sec. 287 (b), (c).

Similarly, if it was not a school bus, it would violate Code (1957), Art. 66½, Sec. 244, if it stopped "upon the paved or improved or main-travelled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway * * *".

Jubb gives as one reason why the absence of flashing red lights was not a proximate or contributing cause of the accident the claim that Salzman was not obligated to stop behind the bus under Sec. 260 of Art. 66½ since it was not equipped with "stop signals * * * as prescribed in this article * * *."

We agree that Salzman was not legally bound to stop. We read the words "stop signals" in Sec. 260 as including the "flashing red stop lights" referred to in Sec. 257 as well as the "stop signals visible to front and rear," also specified in that section. It does not follow that because Salzman was not legally required to stop, a jury could not find that his doing so, when it first "registered" on him that the Jubb carryall was a school bus, was not a natural and probable consequence, reasonably to have been anticipated, of Jubb's having painted the bus to resemble a statutory school bus and having instructed the driver, as he had, always to stop it on the roadway. The duty to stop for a school bus is "as positive and inflexible a duty as that of obeying the boulevard law," *Chackness v. Board of Education of Harford County,* 209 Md. 88, 95-96, and a prudent driver instinctively would stop if he was caused to believe a vehicle ahead was a school bus.

The determination of proximate cause is not a scientific process or one guided by legal abstractions. Whether it exists is to be decided in a common-sense fashion in the light of the attending facts and circumstances, and, unless the facts are undisputed and admit of but one inference, the question is for the jury. So, too, is the question of negligence (which in many instances overlaps or is intertwined with that of proximate cause)—that is, the determination of whether what occurred reasonably was to have been anticipated as a result of, or was induced by, the defendant's acts or omissions. *Pennsylvania Steel Co. v. Wilkinson,* 107 Md. 574; *Baltimore v. Terio,* 147 Md. 330, 335; *Lindenberg v. Needles,* 203 Md. 8; *Campbell v. State,* 203 Md. 338, 346.

We think the evidence and the inferences in the case under consideration permit a finding of negligence on the part of Jubb that was a proximate and contributing cause of the injury sued for. The partial imitation of a school bus, without making the imitation complete by the addition of flashing red lights, and the stopping of the pretender on the slow lane of the roadway were calculated to produce just the results that occurred—to cause one motorist to stop late or unexpectedly in the remaining lane of the roadway because of his sudden impression that a school bus was receiving or discharging children, and to cause a following motorist to be misled by the presence of a yellow body and the absence of flashing red lights into believing, until too late to stop, that the standing vehicle was a State Roads truck, which both the lead car and he could, and would, pass freely.

This view of the case disposes of Jubb's more detailed contention that any causal connection between any negligence of his and the injury was broken by the interposition of an independent cause, that is, the negligence of East Coast.

Our view is that if a jury determined Jubb to have been negligent, his acts and omissions induced the negligent acts and omissions of East Coast and the two would have concurred in causing the injury. An act is negligent if the actor should realize that it is likely to affect the conduct of another or a third person in such a manner as to create an unreasonable risk to the other. *Restatement, Torts,* Sec. 303; *Pennsyl-*

514

*vania Steel Co. v. Wilkinson,* 107 Md. 574, 581, *supra; Texas Co. v. Pecora,* 208 Md. 281; *Baltimore v. Terio, supra.* Cf. *Baltimore v. Walker,* 208 Md. 454.

Jubb urges that there is as definite a failure here to show that he contributed to the happening of the accident as there was as to the defendants in *Bloom v. Good Humor Ice Cream Co.,* 179 Md. 384, and *Maggitti v. Cloverland Farms Dairy,* 201 Md. 528, in both of which this Court rejected claims that double parked vehicles had contributed to the accident, under the views that (a) the parkings were to be regarded as passive acts, and (b) the accidents were caused by independent intervening acts which were neither induced by, nor foreseeable as the consequences of, the irregular parkings. We think that in the case before us there is more than the passive negligence, if that, found in *Bloom* and *Maggitti.* The connection between Jubb's acts and omissions and the injury was stronger and more direct, and what occurred here was far more likely to have occurred as a result of what he did and did not do, and so to have been anticipated, than in those cases. On the facts, the case before us is more nearly akin to the cases distinguished by Judge Henderson for the Court in *Maggitti* at page 533 of 201 Md. Compare also the factual situation in *Bracy v. Lund,* 84 P. 2d 670 (Wash.), relied on in *Maggitti,* with that in *Caylor v. B. C. Motor Transport, Ltd.,* 71 P. 2d 162 (Wash.), which was distinguished by the Washington court in the *Bracy* case. See also *Holler v. Lowery,* 175 Md. 149, and *Collins v. Risner,* 269 F. 2d 654 (4th Cir.).

The trial court's charge was faulty in that it told the jury the Jubb vehicle was a school bus as a matter of law and, as such, entitled to stop on the highway, and added that the jury must determine whether the failure to have flashing red lights on the school bus was a proximate cause of the accident. Jubb took timely and specific exceptions to the charge. Under our holdings in the case the instructions were incorrect. It is not entirely clear that the error really was prejudicial, or that the ultimate question to be decided by the jury would be essentially different. But we feel the case must be remanded for trial on the issue of whether Jubb was negligent in creating a

foreseeably confusing situation by having his vehicle stop where it should not stop and by causing it, but for the absence of flashing red lights, to resemble a school bus, with its unique power to stop other traffic. Under *Keitz v. National Paving Co.,* 214 Md. 496, only the issue of Jubb's liability will be retried, all other issues having been settled by the first jury's verdicts, not questioned in this Court.

> *Judgment against appellant, Eckhart Jubb, reversed, with costs, and case remanded for further proceedings.*