501 A.2d 877

CAMBRIDGE IRON & METAL COMPANY

v.

Henry A. HARTMAN, Jr. et al.

No. 745, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Dec. 16, 1985.

Barry Bach and Laurie R. Bortz (Smith, Somerville & Case and John W. Sheldon on brief), Baltimore, for appellant.

Abraham Paul Korotki, Towson, for appellees.

Before GILBERT, C.J., and WILNER and ROBERT M. BELL, JJ.

GILBERT, Chief Judge.

Five Baltimore City firemen were injured in varying degrees while fighting a magnesium fire in a scrap metal yard owned by Cambridge Iron & Metal Company (Cambridge). The firemen [1] sued Cambridge in the Circuit Court for Baltimore City. A jury, presided over by Judge David Ross, returned verdicts in favor of the plaintiffs in the aggregate sum of $618,000. Cambridge, in this Court, asserts that Judge Ross erred in refusing to direct a verdict in favor of Cambridge and in declining "to instruct the jury on opportunity to warn and a number of other legal issues." The firemen have cross-appealed because of Judge Ross's rejection of their request for a jury instruction relative to punitive damages. [2]

The immediate cause of the injuries to the firemen was an explosion that apparently emanated from a metal box containing approximately 125 cubic feet of magnesium plates. Although the firemen were informed that the fire was a magnesium one, Cambridge did not alert them concerning the existence of the particular box of magnesium plates.

To support its contention that Judge Ross erred in refusing to direct a verdict in its favor, Cambridge advances a threefold argument. First, it asserts that as a matter of law it had no duty to warn the firemen of the normal and ordinary dangers attendant to fighting a known magnesium fire at a scrap metal yard. Cambridge says that "any

---

**1.** Loss of consortium claims maintained by the wives of the firemen were unsuccessful.

**2.** We note a growing tendency on the part of plaintiffs to assert a claim for punitive damages in almost every action without regard to the purpose, aim or intent of the concept of punitive damages. For a collection of cases demonstrating when punitive damages are recoverable, see *Medina v. Meilhammer,* 62 Md.App. 239, 489 A.2d 35 (1985).

alleged danger was reasonably discoverable by the [firemen]."

■ It is well settled in Maryland that firemen and policemen who, in the course of their official duties, enter upon the property of another are licensees. *Sherman v. Suburban Trust Co.*, 282 Md. 238, 384 A.2d 76 (1978); *Aravanis v. Eisenberg*, 237 Md. 242, 206 A.2d 148 (1965). Ordinarily the owner of the property owes no duty to the firemen or policemen other than that of not wilfully or wantonly injuring them. *Flowers v. Sting Security*, 62 Md.App. 116, 488 A.2d 523, *cert. granted*, 303 Md. 418, 494 A.2d 211 (1985). Firemen and policemen, as well as all other licensees, must take the property as they find it. *Sherman*, 282 Md. 238, 284 A.2d 76; *Flowers*, 62 Md.App. 116, 488 A.2d 523.

One difficulty with characterizing firemen and police officers as "licensees" is that, strictly speaking, they are not "licensees," but persons who are authorized by law to go upon the property of another in response to an emergency. The appellation "licensee" as applied to firemen and policemen is a misnomer since rarely are they licensed by the property owner to enter upon that property. On the other hand, they certainly are not trespassers because they are privileged to enter upon the property and there to respond to the emergency. *Flowers*, 62 Md.App. 116, 488 A.2d 523; W. Prosser, *Handbook of the Law of Torts* § 61 at 429–430 (5th ed. 1984). Perhaps firemen and policemen rather than qualifying as "licensees" are more correctly described as *"de gratia* licensees" (by grace or favor licensees). The fact remains, however, that firemen and policemen, in carrying out their duties, may enter upon the property of a landowner without express permission so long as the entry is authorized by law.

■ Equally well settled is the proposition that a landowner has a duty to make a licensee aware of hidden dangers of which the owner has knowledge, provided the owner has an opportunity to give the warning. *Sherman*, 282 Md. at 243, 384 A.2d at 80. Whether there was a

hidden danger on the premises which could not reasonably be discovered by the firefighters was not a question of law for the court but one of fact—an issue for the jury to decide. *Bethlehem Steel Co. v. Munday*, 212 Md. 214, 220, 129 A.2d 162 (1957). Indubitably, the jury believed that the firemen's injuries did not stem from normal and ordinary dangers.

■ Alternatively, Cambridge argues that whatever duty it may have had to warn the firefighters was, as a matter of law, discharged when the latter were told the combustion was magnesium. According to Cambridge, the firemen should have been alerted instantly to the danger of a potential explosion. Starting from that premise, Cambridge reasons that given the then existing emergency, it is unreasonable to require it to inform the firefighters as to the existence and whereabouts of a particular box of magnesium.

We decline to hold that, as a matter of law, a property owner's mere utterance of a warning that a fire involves magnesium excuses a failure to warn of a hidden danger of which the owner has knowledge. Such a holding would be particularly onerous where, as here, the firemen arrived at the scene and saw magnesium scraps burning under a flatbed truck. The record discloses that a magnesium fire is readily recognizable because it burns as a bright white light. It is undisputed that the firemen were not told of the magnesium plates in the box which was situated behind them when they were fighting the fire that was located under the flatbed truck. There was evidence that when the firefighters arrived at Cambridge, they went immediately to the area of the truck and commenced their efforts to extinguish the fire. One of the firemen said that the Cambridge employees he met said nothing to him about the box of magnesium and were fleeing the scene. They were, in the fireman's words, "running like Jesse Owens."

From that evidence the jury could find that Cambridge did not provide adequate warnings to the firefighters.

Judge Ross was correct in not directing a verdict in favor of Cambridge. *See C.S. Bowen Co., Inc. v. Maryland Nat'l Bank,* 36 Md.App. 26, 33–34, 373 A.2d 30, 35 (1977).

Cambridge also maintains that the firefighters should not be permitted to recover because they were injured "as a result of the normal and customary risk which attends fighting all magnesium fires, namely explosion." Cambridge either fails to see or ignores the key words, "normal and customary risks." We think that when firefighters are told there is a magnesium fire and when arriving on the scene they see magnesium burning, that they subject themselves to the "normal and customary risks" of fighting that fire. They do not, however, as a matter of law, subject themselves to hidden dangers known to the owner but undisclosed to the firemen. Whether the firefighters in the instant case knew or reasonably should have known of the existence of the box of magnesium plates was a question for the jury, not the court. Patently, the jury concluded that Cambridge had knowledge of the hidden danger but failed to warn the firemen of that peril. As a result, the jury obviously concluded that Cambridge was negligent and, thus, liable.

We refuse to declare, as a matter of law, that because some magnesium is perceived to be burning, the owner is immunized from responsibility for the injuries caused by magnesium which is unseen and unknown to the firefighters.

Cambridge further avers that Judge Ross erred in refusing to instruct the jury that a landowner's duty to warn licensees of hidden dangers arises only when there is an opportunity to warn. Cambridge alleges that the jury, under proper instructions, could have found that Cambridge did not have an adequate opportunity to warn the firefighters about the box of magnesium, even though it admittedly had sufficient time to warn them in general about the magnesium fire.

The Cambridge argument is founded on the statement in *Sherman v. Suburban Trust Co.*, 282 Md. at 244, 384 A.2d 76 that:

> "[T]he basic Maryland law [is] that a fireman is a licensee, ordinarily entitled only to that duty of care owed to a licensee by a property owner, which included a duty on the owner's part to warn of any hidden dangers if he has knowledge there of *and an opportunity to give warning.*" (Emphasis supplied.) [3]

*See also Aravanis v. Eisenberg*, 237 Md. at 250, 206 A.2d 408; *Shypulski v. Waldorf Paper Products Co.*, 232 Minn. 394, 45 N.W.2d 549 (1951); *Jenkins v. 313–321 W. 37th St. Corp.*, 284 N.Y. 397, 31 N.E.2d 503 (1940), *reh'g denied*, 285 N.Y. 614, 33 N.E.2d 547 (1941); *Smith v. Twin State G. & E. Co.*, 83 N.H. 439, 144 A.57 (1928).

There was in the matter *sub judice* clear evidence that Cambridge communicated to the firemen that magnesium was involved in the fire. That communication, however, did not alert the firefighters to the presence of the box containing magnesium, although Cambridge had sufficient knowledge to warn about the box.

 Trial courts are not required to instruct juries on abstract points of law bearing no relationship to the case being tried. *Schaefer v. Publix Parking Systems*, 226 Md. 150, 152–53, 172 A.2d 508, 509 (1961). The thrust of Cambridge's theory at trial was that it either had no obligation to warn or that whatever duty it had was discharged by the warnings it gave. No issue was raised regarding an opportunity to warn inasmuch as there was no evidence concerning the lack of opportunity to warn.

---

**3.** What the Court meant by an "opportunity to give warning" is not explained. Does it mean an owner is excused from giving notice if the owner is absent, unconscious, injured, unable to communicate or prevented from giving notice for another reason? Does the phrase mean that the owner should remain on the scene and point out any hidden danger to the firemen? Or does the Court mean simply that the owner must give warning at the first opportunity?

Cambridge next fires a virtual scatter-gun blast, hitting a variety of rejected proposed jury instructions including the inherent dangers of firefighting, the meaning of "hidden danger," firemen's voluntary exposure to danger, and methods of calculating and assessing damages. Cambridge invites us to examine its proposed instructions. We have done so. We have also read the instructions Judge Ross gave to the jury. We believe his instructions constitute an appropriate and adequate statement of the law. The judge "need not expound precisely that language requested if the appropriate and applicable law is fairly covered in his charge." *Lumber Terminals v. Nowakowski*, 36 Md.App. 82, 86–87, 373 A.2d 282, 286 (1977). See Md.Rule 2–520(c) (former Rule 554.b.1).

■ Finally, on the issue of damages, Cambridge assails the admittance of nonexpert, lay testimony on the medical questions of vision impairment, ventilatory disease, and carbon dioxide poisoning. We perceive no error. The firemen were qualified to testify about their physical symptoms, including vision impairment and respiratory ailments. "[A]ny nonexpert may testify to facts coming under his observation, even though the facts are such as are provable ordinarily by experts." *Galusca v. Dodd*, 189 Md. 666, 669, 57 A.2d 313, 314 (1948).

■ The appellees, as we have previously noted, filed cross-appeals on the issue of Judge Ross's refusal to instruct on punitive damages. The cross-appeals are totally devoid of merit. Recently in *Medina v. Meilhammer*, 62 Md.App. 239, 489 A.2d 35 (1985), this Court discussed the matter of punitive damages. We said:

"Punitive damages may be recovered in negligence actions without proof 'of *actual intent* to injure or *actual malice*' provided that there is on the part of the defendant such extraordinary or outrageous conduct as to amount to the possible legal equivalent of actual intent or

actual malice; also described as the wanton, reckless disregard for the rights of others."

*Medina,* 62 Md.App. at 248–49, 489 A.2d at 39–40.

The evidence in the case at bar does not constitute wanton, reckless disregard for the rights of others. The conduct of Cambridge, viewed in a light favorable to the firefighters, amounts to no more than mistake, thoughtlessness or inadvertence occasioned by the excitement and confusion of the moment. It certainly was not a wilful, wanton or malicious act. Judge Ross properly rejected the firemen's requested instruction on punitive damages.

JUDGMENTS AFFIRMED.

COSTS TO BE DIVIDED BETWEEN APPELLANT AND APPELLEES.