**Lorena P. PIPPIN, in her capacity as Guardian and Next Friend of James Michael Green, Jr., Joshua Lee Green, and David Matthew Green, Plaintiff,**

v.

**POTOMAC ELECTRIC POWER COMPANY, et al., Defendants.**

**No. CIV. A. AW–98–3236.**

United States District Court, D. Maryland, Southern Division.

Dec. 20, 1999.

---

William E. McDaniels, Joseph G. Petrosinelli, and Williams and Connolly, Washington, D.C., for Plaintiff.

Martin H. Freeman, Mark A. Freeman, and Freeman & Jenner, Rockville, Maryland, for Defendant Potomac Electric Power Company.

Stan M. Haynes, Anthony G. Lardieri, and Semmes, Bowen & Semmes, Baltimore, Maryland, for Defendant Asplundh Tree Expert Company.

Deborah L. Robinson, Peter A. Woolson, Jill E. O'Donnell, and Robinson, Woolson, O'Connell, Baltimore, Maryland, for Defendant Reilly Industries, Inc.

Carmen J. Martorana, Rockville, Maryland, for Third–Party Defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Parties are before the Court on Defendant Potomac Electric Power Company's Motion for Partial Summary Judgment as to Counts V and VI, Defendant Potomac Electric Power Company's Motion to Compel Discovery and For Costs as to Third–Party Defendant Williard Packaging Company, and Plaintiff's Motion for Partial Reconsideration of the Court's Order dated September 2, 1999, or in the Alternative for Leave to Amend the Complaint. All motions are ripe for resolution. No hearing is deemed necessary. Local Rule 105.6 (D.Md.). For the reasons stated below, the Court will grant Defendant Potomac Electric Power Company's motion for partial summary judgment, deny Defendant Potomac Electric Power Company's motion to compel, and for costs, and deny Plaintiff's motion for reconsideration.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to the pending motions are as follows. On March 13, 1996, while driving his tractor-trailer along Woodfield Road, located in Gaithersburg. Maryland, James Michael Green struck a utility pole in an industrial park. The collision caused the utility pole and the transformers attached to it to fall onto Green's truck and kill him. Plaintiff, Lorena Pippin, in her capacity as Guardian and Next Friend of James Michael Green and his three minor children, has brought this wrongful death and survivor action against Defendants Reilly Industries ("Reilly"), Potomac Electric Power Company ("PEPCO"), and Asplundh Tree Expert Company ("Asplundh") as responsible parties to Green's death.

In her original complaint, Plaintiff brought negligence and strict liability claims against Reilly and negligence claims against PEPCO and Asplundh. On June 17, 1999, however, the Plaintiff filed an Amended Complaint to include claims for

strict liability against PEPCO as well. In the Amended Complaint, Plaintiff alleges that "Defendants Reilly and/or PEPCO designed and/or manufactured" the utility pole. (Amended Complaint, ¶ 11). The Amended Complaint also states that PEPCO owned and operated the utility pole, Reilly designed and manufactured it, and Asplundh inspected and maintained the pole. (Amended Complaint, ¶¶ 6, 7, 10). Plaintiff alleges that Defendants knowingly installed the utility pole, which she claims was structurally defective. Plaintiff further alleges that the placement of electrical transformers on top of the pole further rendered it unsafe, particularly because it was situated along Woodfield Road. In connection with her claim for punitive damages, Plaintiff alleges that PEPCO had actual knowledge of a detached guy wire of the utility pole, and Defendants consciously considered the risks associated with not repairing the guy wire and refused to repair it.

In an Order dated September 2, 1999, the Court ruled, inter alia, that Plaintiff had not alleged facts sufficient to prove actual malice for her punitive damages claims to lie. Accordingly, the Court dismissed Plaintiff's claims for punitive damages.

Defendant PEPCO now moves for dismissal of the strict liability claims brought against it in Counts V and VI of Plaintiff's Amended Complaint and moves to compel discovery and for costs against Third–Party Defendant Williard Packaging Company ("Williard"). Plaintiff seeks partial reconsideration of the punitive damages ruling in the Court's Order dated September 2, 1999. The Court will address the motions below seriatim.

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Haavistola v. Community Fire Co. of Rising Sun, 6 F.3d 211, 214 (4th Cir.1993); Etefia v. East Baltimore Comm. Corp., 2 F.Supp.2d 751, 756 (D.Md.1998). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 164 (4th Cir.1997) (citing Anderson, 477 U.S. at 255, 106 S.Ct. 2505); Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). To defeat such a motion, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. Anderson, 477 U.S. at 252, 106 S.Ct. 2505; Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " Celotex, 477 U.S. at 327, 106 S.Ct. 2548 (citations omitted).

In determining whether genuine and material factual disputes exist, the Court has reviewed the parties' respective memoranda and the many exhibits attached thereto, construing all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. PEPCO's Motion for Partial Summary Judgment as to Counts V and VI

■ PEPCO seeks dismissal of the strict liability claims against it, arguing that it is neither a manufacturer or seller

of utility poles, and thus, it cannot be held strictly liable in a products liability case. Plaintiff argues that PEPCO participated in the design and manufacture of the pole and was instrumental in depositing it into the "stream of commerce." PEPCO maintains that it is not a seller or manufacturer within the meaning of Section 405(A) of the Restatement of Torts. The court concludes that no genuine dispute of material fact exists on this issue, and PEPCO is entitled to judgment as a matter of law.

■ In this products liability action brought under diversity jurisdiction, Maryland law applies. In determining whether a defendant may be held strictly liable in tort, Maryland has adopted the Restatement (Second) of Torts Section 402A position. *See Phipps v. General Motors Corporation,* 278 Md. 337, 363 A.2d 955 (1976). The Restatement of Torts Section 402A governs liability of a seller of a product for physical harm to the user or consumer. It provides that:

> (1) One who **sells** any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the **ultimate user or consumer,** or to his property, if
>
> (a) the seller is **engaged in the business of selling** such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement of Torts 402A (emphasis added). To recover on a strict liability claim, a plaintiff must prove (1) the existence of a defect, (2) the attribution of the defect to a "seller," and (3) a causal relation between the defect and the injury. *See Loh v. Safeway Stores,* 47 Md.App. 110, 121, 422 A.2d 16, 23 (1980). Maryland courts also recognize that strict liability may be imposed upon manufacturers as well. *See Phipps,* 363 A.2d at 957–58.

The initial inquiry is whether PEPCO is a seller or manufacturer of the utility pole under the Restatement. In her Amended Complaint, Plaintiff alleges that "Defendant Reilly Industries, Inc. ("Reilly"), formerly known as Republic Creosoting Company, is a company, which, at all times, designed and manufactured the utility poles." Plaintiff, however, asserts that PEPCO is a manufacturer since it requires poles to meet certain specifications before it will purchase them. The Court finds that, although PEPCO does order poles with certain configurations and specifications, it does not perform the duties of one engaged in the business of selling or manufacturing poles. According to PEPCO Manager John Murphy's declaration, PEPCO is not in the business of selling utility poles. Rather, PEPCO is in the business of selling electricity to its customers. PEPCO did not sell the utility pole at issue in this case. In fact, it purchased the pole from Reilly. (Murphy Declaration, at 2). PEPCO does participate in the selection of wood, chemicals used in processing the wood, and methods by which the wood is treated. PEPCO is charged with a duty to implement standards of the American Wood Preservers Association ("AWPA") and the American Standards Association ("ASA") which promulgated standards for the utility pole at issue, (Plaintiff's Exhibit 8, John W. Shuler Deposition, at 74–75). Such participation by PEPCO appears to be that which is reasonably expected by a company making such a purchase. While there does appear to be a dispute over the degree to which PEPCO was involved in inspecting the poles after manufacture— whether PEPCO representatives or an outside inspector performed the inspections, the inspection function does not deem PEPCO a seller or manufacturer.

In a case with facts similar to those in the case at bar, the Maryland Court of Special Appeals ruled that an electric company could not be held strictly liable in a products liability case. *See Dudley v. Baltimore Gas & Electric Company*, 98 Md. App. 182, 632 A.2d 492 (1993). In *Dudley*, the plaintiff brought strict liability claims against the electric company, Baltimore Gas & Electric Company ("BG & E") alleging that BG & E was strictly liable for damages resulting from a fire in a customer's home. *Id.* at 495. Plaintiff alleged that BG & E was strictly liable because it provided gas piping and a meter box which was defective. In rejecting the Plaintiff's strict liability claim, the *Dudley* Court stated:

> strict liability, as articulated in § 402A, is applicable only to sellers, i.e., "any person engaged in the business of selling products for use or consumption." Restatement (Second) of Torts § 402A cmt. F (1965) (emphasis added). BG & E is engaged in the business of selling gas to its customers; it is not in the business of selling gas pipes or gas meters to its customers. Natural gas is the product that BG & E sells, and, it must be that product that is defective in order for strict liability to attach here. The defective condition of the "items supplied," i.e., the pipes, meter, lines, etc, is not a basis for strict liability because those products were not sold to Ms. Dudley by BG & E. Strict liability contemplates a "sale;" thus, Ms. Dudley cannot recover on a strict liability theory of defective manufacture of these other "items."

*Dudley*, 632 A.2d at 502.

The Plaintiff in *Dudley* made claims similar to those made by Plaintiff in the case at bar. Plaintiff alleges that PEPCO is strictly liable as a result of a defect in the utility pole. PEPCO, however, is not in the business of selling utility poles, but rather electricity service. Thus, in order for strict liability claims to lie against PEPCO, Plaintiff would have to bring claims for a defect in the electricity service, not in the utility pole as asserted in her complaint. The fact that PEPCO ordered poles with certain configurations cannot be the basis of a strict liability claim against PEPCO. It is clear that Section 402A was intended to protect the consumer. In this case, PEPCO was the consumer.

■ Upon a reading of the *Phipps* progeny, including the *Dudley* opinion, it appears Maryland recognizes that strict liability is applicable only to sellers and manufacturers. The only theory that Plaintiff can rely on is one adopted by other jurisdictions—namely, that PEPCO was involved in releasing the utility pole into the "stream of commerce." Courts have ruled that one may be held strictly liable if engaged in depositing products into the stream of commerce. *See Galindo v. Precision American Corp.*, 754 F.2d 1212 (5th Cir.1985) ("It is clear that the rationale for imposition of strict liability is served only if the defendant is in the business of releasing products into the stream of commerce."). Even in the cases cited by Plaintiff, however, the stream of commerce theory is applied only to those "in the business of selling ... [and not] to those who are not engaged in that activity as part of their business." *Geboy v. TRL*, 159 F.3d 993, 998 (7th Cir.1998). In *Geboy*, the Court affirmed the district court's award of summary judgment in favor of the defendants on the theory that the sell of a product was not the primary activity of a defendant's business. PEPCO has not placed a product into the stream of commerce. Selling utility poles is not even its secondary business as was the case in *Geboy*. Plaintiff cites an unpublished decision by the Missouri Court of Appeals for the proposition that under the stream of commerce approach to strict liability, the actual sale of the product is not the determining factor, but rather the participatory connection, for personal profit or benefit, with the product and the enterprise that created demand for the product.

*See Budding v. SSM Healthcare System,* 1999 WL 709801, at * 4 (Mo.App. September 14, 1999). Apart from the fact that this case is not persuasive authority, the Plaintiff overlooks a crucial component of the ruling. The Court found that the focus in a stream of commerce analysis is on the benefit to a party "in the ordinary course of business which involves some sort of **transfer of the product to another.**" *Id.* (emphasis added). Thus, the stream of commerce only flows by a transfer of the product to another. We do not have such a transfer in this case. PEPCO is the end-user of the utility pole. It is not transferred to anyone else after PEPCO purchases it. The existence of a transfer is also the focus in the Kentucky case cited by Plaintiff. *See Taylor v. General Motors, Inc.,* 537 F.Supp. 949 (E.D.Ky.1982). While the Court in the *Taylor* case found that a defendant, although it was not a manufacturer, was subject to strict liability because of its intimate involvement in the design and manufacturing process, the case is distinguishable because the product involved was actually transferred to another party when the defendant released it from its control. In the instant case, there was no subsequent transfer.

PEPCO is the direct recipient of the product at issue here. Although a duty of negligence may have been owed to Green, he was not a "customer" in the strict liability sense of the term. In fact, PEPCO as the purchaser, is the customer here. There is nothing that leads the Court to believe that Maryland would adopt the "stream of commerce" standard as have other jurisdictions. If Maryland did adopt such a stance, the facts of this case still lead to the conclusion that PEPCO was not a seller or manufacturer, and did not put a product into the stream of commerce. Here PEPCO's goal was to comply with the ASA standards for the design of the utility pole used by several other utility companies. As a matter of law, plaintiff cannot prove the elements required to bring a strict liability claim against PEPCO. Thus, the Court will grant PEPCO's

motion for partial summary judgment as to counts V and VI. This ruling in no way affects any other claims or theories of liability offered by Plaintiff.

### III. *Defendant PEPCO's Motion to Compel Discovery, and for Costs*

Defendant PEPCO requests that the Court compel third-party defendant Williard to produce its responses and accompanying documents to PEPCO's request for production of documents without objections. PEPCO also seeks costs in the amount of $1,200.00 for time expended in obtaining the documents at issue and the filing of this motion. PEPCO maintains that it is entitled to certain documents in the possession of Williard. Williard represents that it has submitted all of the requested documents to which it has access. PEPCO has not submitted a reply to Williard's response. After reviewing the record and the representations made by Defendant Williard Packaging Company, the Court will deny PEPCO's motions to compel and for costs.

Federal Rule of Civil Procedure 37 provides that a discovering party may move for an order compelling a party to submit to a discovery request. *See* Fed.R.Civ.P. 37(a)(2). Rule 37 also provides that if a motion to compel is granted or the producing party does not answer or object to interrogatories, the Court may also award costs to the moving party. *See* Fed. R.Civ.P. 37(a)(4)(A) and 37(d). According to PEPCO, it submitted requests for documents pursuant to Federal Rule of Civil Procedure 34 on May 19, 1999. Williard's response was due by June 21. On July 29, PEPCO sent a letter to Williard's counsel requesting the documents, and again expressed its need for the documents in a follow-up letter dated August 23. Williard maintains that it is not in possession of the documents requested. It further asserts that it retrieved some of the requested records from the Land Records Office in the Montgomery County Circuit Court and

provided them to all counsel of record. Apparently, it also provided a photograph bearing an aerial view of the premises upon which the accident occurred.

The Court will deny PEPCO's discovery motions. PEPCO has not identified specific documentation that it seeks from Williard. Furthermore, the Court does not have before it any indication that counsel for Williard is being untruthful about Williard's possession of documents requested. In the absence of specific direction by PEPCO about which documents it believes Williard is withholding, or any indication of bad faith on the part of Williard, the Court must deny the motion to compel. Because the Court will not grant PEPCO's motion to compel and there has been some response by Williard, no costs are appropriate.

## IV. *Plaintiff's Motion for Partial Reconsideration of Court's Order*

The Court's Order dated September 2, 1999, dismissed Plaintiff's claims for punitive damages against Defendants in this action. The Court found that sufficient facts had not been pled to allow claims for punitive damages to proceed. Plaintiff contends that her allegations are sufficient to show actual malice by Defendants. Defendant PEPCO maintains that Plaintiff has presented no new factual allegations to support its motion. The Court agrees. The arguments relied on by Plaintiff in this motion were actually before the Court in the earlier motion, and the Court is compelled to affirm the September 2, 1999 ruling on punitive damages. Upon consideration of this motion for reconsideration of that Order, the Court does not believe that it was in error, or that Plaintiff has presented any new information which warrants a modification of that ruling. Therefore, the Court reasserts its ruling, and Plaintiff may not bring claims for punitive damages in this case.

▇▇▇ This Court's memorandum opinion applied the "actual malice" standard of Maryland law for punitive damages claims.

*See Montgomery Ward v. Wilson,* 339 Md. 701, 728–29 n. 5, 664 A.2d 916, 930 n. 5 (1995) (actual malice, rather than implied malice is the Maryland standard for punitive damages). Under Maryland law, actual malice is "characterized by evil motive, intent to injure, or fraud . . . ." *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633, 653 (1992). In a products liability case, the "evil motive" generally characterizing actual malice consists of "actual knowledge of the defect and deliberate disregard of the consequences." *Id.* Thus, actual malice in a products liability case, based upon either negligence or strict liability, requires proof of "(1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or deliberate disregard of the foreseeable harm resulting from the defect." *Id.* "Actual knowledge" requires that the defendant actually knew of the product's danger at the time the product left its control or possession. *See id.* (citation omitted; footnote omitted). Furthermore, "conscious or deliberate disregard" on behalf of the defendant is required, and the Court of Appeals "emphatically state[d] that negligence alone, no matter how gross, wanton, or outrageous, will not satisfy this standard. Instead the test requires a bad faith decision by the defendant to market a product, knowing of the defect and danger, in conscious or deliberate disregard of the threat to the safety of the consumer." *Id.* at 654. *See also LeMarc's Management Corp. v. Valentin,* 349 Md. 645, 652, 709 A.2d 1222, 1226 (1998) (recognizing that "this Court has consistently required that punitive damages only be awarded based on the defendant's conscious wrongdoing"). Finally, because of the penal nature and potential for debilitating harm found with a punitive damages award, "in any tort case a plaintiff must establish by clear and convincing evidence the basis for an award of punitive damages." *Zenobia,* 601 A.2d at 657. An award of punitive damages depends upon the heinous nature of the defendant's tor-

tious conduct and should further the historical purposes of punitive damages—punishment and deterrence. *See id.* at 649–50.

■■■ Based upon the aforementioned standards, the Court evaluates the Amended Complaint to determine whether Plaintiff has sufficiently pled allegations supporting claims for punitive damages. To state a claim for punitive damages, Plaintiff must allege that Defendants had actual knowledge of the dangers of a defect in the utility pole and that Defendants made a bad faith decision to market the product despite its knowledge of the threat. On the issue of knowledge, it appears that Plaintiff could meet the actual knowledge prong of the malice standard. As Plaintiff alleges in the Amended Complaint, PEPCO and Asplundh inspected the utility pole following an accident a year earlier in 1995, retrieved the broken guy wire, but did not repair or replace the guy wire. (Amended Complaint, ¶ 19). Plaintiff further asserts that when PEPCO or Asplundh was asked whether the pole might collapse, they responded, "not unless someone hits it." (Complaint, ¶ 20). Thus, it could be inferred that Defendants had actual knowledge of a defect in the pole that might have caused the injury in this case. Upon inspection of the pole following the earlier accident in 1995, Defendants in fact anticipated the very occurrence alleged to have caused the death of Mr. Green. The Court, however, finds that Plaintiff's complaint does not sufficiently plead the "bad faith" prong of the actual malice standard—that defendants consciously or deliberately disregarded the harm resulting from a defect.

The bad faith element has been explored in several Maryland cases, and most Courts found that Plaintiff had not fulfilled its burden on this prong. As to this second prong, the Court finds the holding in *Bell v. Heitkamp, Inc.,* 126 Md.App. 211, 230, 728 A.2d 743, 752 (1999), and *Medina v. Meilhammer,* 62 Md.App. 239, 489 A.2d 35 (1985), to be dispositive on this matter.

*Bell* stands for the proposition that negligence alone, no matter how gross, wanton, or outrageous, is not sufficient to prove punitive damages. The facts of the *Bell* case are very similar to those in the case at bar. In *Bell,* plaintiff brought a wrongful death and survivor action against corporate defendants under theories of negligence. *Id.* at 745. The complaint alleged that the defendants negligently failed to cover and warn of a hole they had dug on a commonly used footpath in a residential area. The victim died when he fell into a hole left uncovered by employees of one of the defendants. Apparently, there had been some discussion of the dangerous manner in which the hole was kept when workers were not in the vicinity—indicating actual knowledge. However, the Court held that those facts were insufficient to prove punitive damages. The conscious disregard component of the test was not sufficiently supported by the facts.

In *Medina,* the Court did not allow the punitive damages claims even under the less stringent standard of "implied malice" with a seemingly more egregious set of facts. *See Medina,* 489 A.2d at 39–40. In *Medina,* applying the implied malice standard, the Court of Appeals held that the defendants' actions amounted to negligence, but not of the aggravated sort required. In that case, apartment complex workers created a dangerous situation by digging a hole around a hot water pipe in the presence of young children, leaving the hole unattended, with knowledge that the children were attracted to the water. The Court however, even under this set of facts held the facts did not rise to the level of aggravated negligence required for punitive damages to lie under the implied malice standard. *See id.* at 251–252, 489 A.2d 35. Thus, a punitive damages claim based on the facts in the instant case would not survive under the older less stringent implied malice standard. In both *Bell* and *Medina,* the element of conscious disregard was lacking.

The facts of the instant case appear to be no more egregious than those in *Bell* or *Medina.* Here the Plaintiff contends that Defendant had actual knowledge of a defect and deliberately disregarded the risk of danger by not repairing the guy wire. The failure to replace a guy wire on a pole in a parking lot is not more egregious than the conduct of the workers in the *Bell* and *Medina* cases. Plaintiff has not provided any new facts or law that would lead the Court to the conclusion that she has demonstrated a sufficient claim for punitive damages under Maryland law. Therefore, the Court relies on current Maryland precedent to hold that Plaintiff did not allege facts that would show Defendants acted with "actual malice". The Court recognizes that Maryland employs an extremely stringent standard for punitive damages. Plaintiff's allegations, while accepted as true for the purposes of this motion, do not rise to the level contemplated by the Maryland standard for punitive damages. Plaintiff has not identified any additional allegation that would in any way alter the Court's decision to dismiss the punitive damages claims. If after the completion of discovery, there is evidence meeting the stringent Maryland standard, the Court will permit Plaintiff to revisit the issue at that time. At this juncture, the Court will not allow Plaintiff to amend her Complaint.

### CONCLUSION

For the foregoing reasons, the Court will grant PEPCO's motion for partial summary judgment with respect to the strict liability claims of Counts V and VI, deny PEPCO's motion to compel discovery and for costs against Williard, and deny Plaintiff's motion for partial reconsideration of the Court's Order dated September 2, 1999. A separate Order consistent with this opinion will follow.

### ORDER

For the reasons stated in the Memorandum Opinion. IT IS this 20th day of December, 1999, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant Potomac Electric Power Company's Motion for Partial Summary Judgment as to Counts V and VI [59–1] BE, and the same hereby IS, **GRANTED**;

2. That Plaintiff's Motion for Partial Reconsideration of the Court's Order dated September 2, 1999, [68–1] BE, and the same hereby IS, **DENIED**;

3. That Plaintiff's Motion for Leave to Amend Complaint [68–2] BE, and the same hereby IS, **DENIED**;

4. That Defendant Potomac Electric Power Company's Motion to Compel Discovery [71–1] BE, and the same hereby IS, **DENIED**;

5. That Defendant Potomac Electric Power Company's Motion for Costs [71–2] BE, and the same hereby IS, **DENIED**;

6. That the Clerk of the Court mail a copy of this Memorandum Opinion and Order to all counsel of record.