CAMPBELL ET AL. *v.* STATE, USE OF DIX ET UX.
CAMPBELL ET AL. *v.* DIX, ADMINISTRATRIX
CAMPBELL ET AL. *v.* TRADER
(Three Appeals in One Record)
[No. 38, October Term, 1953.]

*Decided December 8, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William W. Travers,* with whom were *John W. T. Webb* and *Webb, Bounds & Travers* on the brief, for appellants.

*J. B. Randol Carroll,* with whom were *Thomas F. Johnson, Hilary W. Gans* and *Calvin Harrington, Jr.,* on the brief, for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

These three suits were brought in the Circuit Court for Wicomico County to recover damages resulting from a collision of an automobile and a tractor-trailer, which occurred on a curve on Route 13 about three miles south of Pocomoke City. The automobile, a 1939 Buick sedan, was driven by Willard M. Dix, age 21, and he was accompanied by Roland J. Trader, owner of the car. They

were civilian employees of the United States Coast Guard at Chincoteague, Virginia. Dix was killed and Trader was injured.

The first suit was brought in the name of the State of Maryland under Lord Campbell's Act, Code 1951, art. 67, for the use of Dix's parents, Major Dix and Ethel Mae Dix.

The second suit was brought by Dix's mother as administratrix to recover funeral expenses.

The third suit was brought by Trader to recover for personal injuries and damages to his automobile.

Defendants are George Campbell, trading as Campbell's Express, owner of the tractor; Charles F. Kellam, Campbell's driver; and Savage Truck Line, Inc., owner of the trailer.

The accident occurred on April 15, 1950, at 1:30 a.m. The Buick was southbound, the tractor-trailer northbound. The road, which is 24 feet wide, is separated by a center line into two traffic lanes.

The cases were removed to the Circuit Court for Dorchester County, where they were tried together before a jury.

Trader testified that Dix was driving his automobile entirely to the right of the center of the road, and that the tractor-trailer cut across the center line into the southbound lane. He further testified that Dix tried to avert the collision, but was unable to do so.

On the contrary, Kellam, the truck driver, testified that as he approached the curve, he saw an automobile coming in the center of the road, and he dimmed his lights and turned to the right, but although the front right wheel of the tractor was on the shoulder of the road, the automobile struck the left rear wheel of the tractor and knocked it off. The automobile was hurled about 100 feet to the west side of the road. The tractor-trailer went about 50 feet on the east side of the road.

There was testimony that after the accident there was a cut mark in the road made by the dragging of the left

rear brake drum of the tractor, which dropped after the wheel came off. The mark began east of the center line and ran northeastwardly to the place where the truck came to a stop.

The trial judge overruled defendant's motions for directed verdicts, and the jury awarded Dix's parents $2,700, the administratrix $500, and Trader $1,000. The judge overruled defendants' motions for judgments *n.o.v.*, and entered judgments on the verdicts of the jury. Defendants appealed from those judgments.

*First.* Defendants contended that there was no evidence of negligence on the part of Kellam, the truck driver, legally sufficient to warrant submission of the cases to the jury. The record, however, shows that Trader swore positively that his automobile was entirely in the southbound lane. If that was true, the truck driver must have cut across the center line into the southbound lane. If he did so, he violated the State law commanding that upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except (1) when overtaking and passing another vehicle proceeding in the same direction; (2) when the right half of a roadway is closed to traffic while under construction or repair; (3) upon a roadway divided into three marked lanes for traffic; or (4) upon a roadway designated and sign posted for one-way traffic. Code 1951, art. 66½, sec. 182.

While the driver of a motor vehicle who violates this statutory rule of the road may not necessarily be negligent, his action is strong evidence of negligence where such violation proximately causes a collision; and the burden is then on him to show that the condition of the road or an emergency in the traffic caused him to be rightfully on the left side of the road. Testimony that a driver of a motor vehicle failed to keep to the right of the center of the highway is legally sufficient evidence to warrant the court in submitting the case to the jury on the question of the driver's negligence. *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517, 519.

Defendants argued, however, that Trader's testimony at the trial was inconsistent with his pre-trial deposition, and hence should have been rejected as too contradictory and uncertain to have any probative value. In the pre-trial deposition he swore that he did not know where his car was when it hit the truck. At the trial he said there was a mistake in the deposition, for what he actually meant was that, since he was knocked unconscious, he did not know where his car was after it hit the truck. He then positively testified: "I was on my right side of the road. I know that. * * * I do know he cut in on us. I know that he was on my right hand side."

In *Slacum v. Jolley*, 153 Md. 343, 351, 138 A. 244, this Court, speaking through Judge Offutt, stated the rule that when a witness says in one breath that a thing is so, and in the next breath that it is not so, his testimony is too inconclusive, contradictory, and uncertain, to be the basis of a legal conclusion. That rule has generally been applied to the testimony of a witness given at the trial at which the objection is made, and is not ordinarily extended to the testimony of a witness who is impeached by proof of a conflicting statement made at some other trial or place. *Foble v. Knefely*, 176 Md. 474, 485, 6 A. 2d 48, 52, 122 A. L. R. 831.

Under the rules of the Court of Appeals, the deposition of any party to a proceeding may be used by an adverse party for any purpose. General Rules of Practice and Procedure, part 2, subd. 1, rule 11. As we said in *Billmeyer v. State, for Use of Whiteman*, 192 Md. 419, 64 A. 2d 755, the use of depositions is not limited to purposes of impeachment. However, a party who makes a certain statement in a deposition should not be prevented from testifying concerning the same subject at the trial of his case, but should be given the opportunity to explain, modify, or amplify his statement. If some inconsistency appears between his pre-trial deposition and his testimony at the trial, the credibility

and weight of his testimony are for the consideration of the jury.

Defendants challenged the attempt of the witness to explain the statement he made in the pre-trial deposition. It is evident that defendants were questioning the reliability of his explanation that his statement was a mistake. In any event, it was the function of the jury to determine whether his explanation was credible. The trial judge ruled correctly in refusing to reject his testimony. It may have seemed to be contradictory, but it was not so irreconcilable as to be nugatory.

*Second.* Defendants contended that Trader's statement that his automobile was entirely in the southbound lane was incredible, because the trooper found that the cut mark caused by the scraping of the left rear brake drum of the tractor was in the northbound lane, and most of the debris was also in that lane. We have accepted the rule that a trial judge should reject any testimony which attempts to establish something physically impossible within common knowledge and experience, or something contrary to the laws of nature or indisputable scientific principles within the court's judicial knowledge. However, the judge should use special caution before rejecting testimony on the ground that it is contrary to the laws of nature or scientific principles, because it is so often difficult to determine accurately the effect of such laws and principles. Therefore, the testimony of unimpeached witnesses should not be lightly cast aside as incredible. To justify the Court of Appeals in striking out a verdict on the ground that any testimony supporting it is incredible, the undisputed facts must demonstrate that the testimony is false beyond a reasonable doubt. *York Motor Express Co. v. State, for Use of Hawk,* 195 Md. 525, 74 A. 2d 12.

The Court cannot say that it is beyond a reasonable doubt that Trader's testimony is false, because the tractor-trailer may have swerved to the east before the brake drum fell. To reject Trader's testimony would

amount to usurpation of the function of the jury. In fact, we recognize that marks made by vehicles on a highway cannot be treated as necessarily conclusive for judicial determination of the movements of the vehicles just before a collision. *Shafer v. State, for Use of Sundergill*, 171 Md. 506, 509, 189 A. 273.

*Third.* Defendants contended that there was no evidence that the alleged negligence of the truck driver was the proximate cause of the accident. Their argument was that, as each traffic lane was 12 feet wide, the truck could have crossed the center line several feet and still there would have been enough room for the automobile to pass without colliding with the truck.

The rule is that what is proximate cause of an injury is ordinarily a question for the jury. It is only when the facts are undisputed and susceptible of but one inference that the question is one of law for the court. To decide the question whether the negligence of the defendant was the proximate cause of the injury complained of, it is necessary to decide whether the injury was the natural and probable consequence of the defendant's negligence, and whether it was such as might or ought to have been foreseen in the light of the attending circumstances. Where it is claimed that the defendant's negligence was not the proximate cause of the injury because the result could not reasonably have been foreseen, it is ordinarily a question for the jury whether the result should reasonably have been foreseen. *City of Baltimore v. Terio,* 147 Md. 330, 128 A. 353; *Sun Cab Co. v. Reustle,* 172 Md. 494, 503, 192 A. 292.

Trader testified that the truck, as it came around the curve, cut across the center line, and that it was traveling so fast that it was impossible for Dix to avert the collision. In view of this testimony, it was the province of the jury to determine not only whether the truck did cut across the center line into the southbound lane, but also, if it did, whether that act was the proximate cause of the accident.

*Fourth.* Defendants finally contended that Dix was guilty of contributory negligence as a matter of law. It is a settled rule that where there is a conflict of evidence as to material facts relied on to establish contributory negligence, or the act is of such a nature that reasonable minds, after considering all the circumstances surrounding the happening of the accident, may draw different conclusions as to whether it constituted contributory negligence, the question is for the jury. *Henkelman v. Metropolitan Life Insurance Co.,* 180 Md. 591, 26 A. 2d 418; *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517; *Beck v. Baltimore Transit Co.,* 190 Md. 506, 58 A. 2d 909. Defendants argued that there was no evidence, except Trader's testimony, that the collision occurred in the southbound lane, and without his testimony the evidence shows plainly that Dix cut across the center line into the northbound lane. This final contention is not tenable because, as we have said, the trial judge ruled properly in permitting Trader's testimony to go to the jury.

Finding no reversible error in the rulings of the trial Court, we will affirm the judgments entered on the verdicts of the jury in favor of plaintiffs.

*Judgments affirmed, with costs.*