LITTLE, Etc. *v.* WOODALL, et al.

[No. 517, September Term, 1965.]

*Decided December 12, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Michael E. Loney,* with whom were *Ralph C. Boyd* and *Boyd & Busch* on the brief, for appellant.

No brief and no appearance for appellees.

OPPENHEIMER, J., delivered the opinion of the Court.

The appellant appeals from a judgment of Judge Childs, sitting without a jury, in the Circuit Court for Anne Arundel County, in favor of the appellees in a suit for rescission based on a breach of warranty in a contract for the sale and installation of an aluminum awning carport for the appellees' home in Glen Burnie, Maryland. The appellant contends the trial court erred in permitting rescission of the sales contract on the basis of breach of the warranty and in refusing to grant the appellant's motions for a directed verdict at the close of the appellees' case and at the close of the whole case.[1]

The contract between the parties, dated March 27, 1963, is printed, except that the description of the awning to be installed, the price of $650, and the words "Fully guaranteed" are in writing. One of the printed provisions is that the contract is "subject to strikes, meteorological conditions and other conditions" beyond the appellant's control. Over objection, the court permitted Mr. Woodall, one of the appellees, to testify that the appellant's salesman had said, before the phrase "Fully guaranteed" was inserted, that the awning was guaranteed "against anything"; "This thing is up to stay. You will never have to worry about it * * * Once this thing is up it will stay up."

Mr. Woodall testified that the carport was erected two weeks after the contract was signed. The carport roof was fastened to the house on one side and on the other was supported by four free-standing aluminum posts. He testified that: "Where the carport was fastened to the house the water use to run in between, right straight down the wall. It was never caulked right." It always leaked, he said, between the house and the carport, it was leaking "all the time." Mr. Woodall said he com-

---

1. The first motion should have been for dismissal. Maryland Rule 535. See Smith v. State Roads Comm., 240 Md. 525, 539-40, 214 A. 2d 792 (1965).

plained constantly of the leakage to the appellant, without results, except that on one occasion a man was sent, but was unsuccessful in remedying the condition.

On March 22, 1964, Mr. Woodall testified, it was snowing. He and his wife had gone to bed when, at about 2 A.M., they heard a crash and found that the carport was lying on top of their car. There had been snow and high winds during the month previous to the collapse, but the awning did not then fall. On March 22, the snow was wet and melting fast. The carport had torn loose from the house at the place of the leakage.

Mrs. Woodall testified that, before the phrase "Fully guaranteed" was written in the contract, the salesman had said "nothing would bring it down." She said the accumulation of snow the night before the awning fell was about four inches. The next day she looked to see if anything else in their neighborhood was down, but could see no damage. There were similar carports on the street, some larger than the Woodalls', but the others were all standing.

Mrs. Walters, the mother of Mrs. Woodall, corroborated her daughter's testimony as to the lack of damage to other property in the neighborhood. The official weather report, introduced by the appellees, showed a snow fall in the Baltimore area of 9.7 inches on March 21, with an average temperature that day of 37 degrees and with an average wind of 9.4 miles per hour.

After the lower court denied the motion for a directed verdict, Mr. Little, the appellant, testified he had performed the installation in a good and workmanlike manner and that the materials were the best that could have been used. He said that the method of erection used was the same as that employed by others in the trade and that he had erected hundreds of carports using the same engineering principles as those employed in the present case and that none had collapsed. Weather reports were introduced for the months of December, 1963, January, February and March, 1964.

In answer to a question by the judge, Mr. Little said he had not used an angle iron to attach the awning to the house. On cross-examination, he testified that the manufacturer of the awn-

ing guarantees the material for five years, and he, Mr. Little, guarantees the workmanship for a period of one year. The awning collapsed within the one year period. He did not know why the awning fell. In his opinion, the snow was not heavy enough to collapse the carport, and he did not contend it came down because of a gust of wind.

We agree with the appellant's contention that the warranty did not constitute a contract of insurance. This is true whether the extent of the warranty be considered under the oral testimony as to the meaning of the guarantee,[2] whether it be limited to the appellant's own statement of its nature or whether it be taken as an express warranty within the Uniform Sales Act then in effect. Code (1957), Article 83, Section 30 (since superseded by the Uniform Commercial Code).

A warranty that the article sold will last for a certain time, if unconditional, is binding upon the seller. *Rittenhouse, Winterson Auto. Co. v. Kissner,* 129 Md. 102, 98 Atl. 361 (1916) ; Williston, *Sales* § 212 (Rev. Ed. 1948). However, the phrase "Fully guaranteed," of itself, means no more than that the work shall be done in a good and workmanlike manner and that the material will be adequate for the designated purpose in accordance with the contract. *Pychinka v. Keystone Home Improvement Co.,* 4 D. & C. 2d 492 (Pa. Com. Pleas 1955). Even in the light of the oral testimony, the clear intent of the guarantee within the context of the entire contract is that the carport will stay up, as far as the materials and workmanship are concerned. The printed clause in the contract, which is below the written guarantee, that the contract is subject to meteorological and other conditions beyond the appellant's control, shows that the guarantee was not intended to be unconditional, but was limited to the durability of the material and the quality of the workmanship.

---

2. While objection was made to the oral testimony as to the meaning of the phrase, "Fully guaranteed," the appellant does not press the question of the admissibility of the testimony on appeal. In our opinion, the word "fully" as used was sufficiently ambiguous to sustain the trial court's ruling. Rinaudo v. Bloom, 209 Md. 1, 10-11, 120 A. 2d 184 (1956); Fryer v. Patrick, 42 Md. 51 (1875); McCormick, Evidence § 219 (1954).

However, there was ample evidence before the trier of the facts that the warranty, even though confined to materials and workmanship, had been breached. The testimony that the carport had leaked steadily since its installation and that the appellant, although repeatedly notified, had not remedied the condition, was uncontradicted. The question before us, in respect of the warranty, is the same as that raised by the appellant's motions for a directed verdict—whether there was sufficient evidence to support the finding that the defective workmanship resulting in the leakage was the proximate cause of the carport's collapse. The appellant contends that the evidence of the appellees permitted an inference of a number of possible causes of the collapse of the carport, and that therefore his motions should have been granted and the finding of the trial court was clearly erroneous.

It is true that, generally, a plaintiff cannot recover if it appears from his own testimony that the danger complained of could have resulted either from a breach of duty owed by the defendant to the plaintiff or from some other cause for which the defendant is not responsible. *Langville v. Glen Burnie Lines,* 233 Md. 181, 185, 195 A. 2d 717 (1963). That rule however, in the circumstances here present, must be taken in conjunction with the principle of proximate causation that if the situation wrongfully created by the defendant increased the risk of damage through the operation of another reasonably foreseeable force, the defendant is liable for the ensuing loss. *Walter B. Bradley, Inc. v. N. H. Yates & Co.,* 218 Md. 263, 269-70, 146 A. 2d 433 (1958); *Campbell v. State,* 203 Md. 338, 346, 100 A. 2d 798 (1953); *City of Baltimore v. Terio,* 147 Md. 330, 336, 128 Atl. 353 (1925); and authorities therein cited. See also *Beale, The Proximate Consequence of an Act,* 33 Harv. L. Rev. 633, 650 *et seq.* (1920). The question of reasonable foreseeability, as part of the question of proximate causation, is ordinarily a question for the jury. *Campbell v. State, supra; City of Baltimore v. Terio, supra.*

On the testimony adduced by the appellees, with the reasonable inferences which can be drawn therefrom, we think the evidence was sufficient to support a finding that the breach of the warranty was a proximate cause of the carport's collapse.

The constant leakage, according to the appellees, was down the wall of the house to which the carport was fastened. It was a permissible inference, under the circumstances, that this flow of water during any kind of precipitation would weaken the supports by which the aluminum carport was attached, thereby increasing the risk that the carport would collapse under the weight of snow. That inference is strengthened by the undisputed fact that no other similar carports in the neighborhood fell during the snowfall in which the collapse occurred.

Unlike the situation in *Langville, supra,* no other cause for the collapse was suggested in the appellees' testimony. The doctrine of *res ipsa loquitur* does not generally apply to warranty cases. *Great Atl. & Pac. Tea Co. v. Adams,* 213 Md. 521, 526, 132 A. 2d 484 (1957). The appellant did not have control of the carport after it had been installed. *Dorsey v. General Elevator Co.,* 241 Md. 99, 107, 215 A. 2d 757 (1966) and cases therein cited. Nevertheless, there is some analogy to that doctrine in that the damage may well have been the result of a condition or act which ordinarily would not have resulted in damage if proper care had been exercised in the installation of the carport. While the carport passed from the appellant's control, it was he who had the peculiar knowledge of how it had been installed, and what precautions should have been taken to prevent the defect which resulted. The foreseeability of the risk of the weight of snow operating upon a defective installation may reasonably be charged to the seller. Under the circumstances, the purchaser does not have the burden of establishing that the defective installation was the sole probable cause of the collapse. See *Coca-Cola Bottling Wks. v. Catron,* 186 Md. 156, 161, 46 A. 2d 303 (1946); *Henningsen v. Bloomfield Motors,* 32 N. J. 358, 409-12, 161 A. 2d 69 (1960); *Simpson v. Logan Motor Co.,* 192 A. 2d 122 (D. C. App. 1963). The evidence adduced by the appellees, we think, was sufficient to support a reasonable inference that the breach of the warranty was at least a probable cause of the carport's collapse, because the appellant should reasonably have foreseen the increased risk of the effect of freezing or snowfall caused by the defective installation.

In *Correlli Roofing Co. v. National Instrument Co.,* 240 Md. 627, 214 A. 2d 919 (1965), the appellant had installed a roof

over an addition to the appellee's existing building and had delivered to the appellee a written guarantee, which guaranteed the roof 'to be Leakproof and to wear 15 years under natural wearing conditions.' 240 Md. at 629. The appellee sued for breach of an express warranty on the ground that there was considerable leakage of the guaranteed roof which required the replacement of the entire roof. There was testimony that the roof had leaked the first time it had rained after its completion, and that while the appellant had sent its men out a number of times in response to the appellee's complaints, they were unsuccessful in abating the leakage. A witness for the appellee testified that the leakage was apparently through the flashing installed by the appellant. The appellant called as one of its witnesses a roofer who had been in the business for some 29 years and had made a personal inspection of the allegedly defective roof. He testified that the apparent source of the entry of the water was through the flashing, and that the only thing which would cause the damage to the flashing was the settlement of the building. The president of the appellant testified that he had repaired the flashing, and that in his opinion the cracks in the flashing were due to settlement of the building. There was some testimony on behalf of the appellee in contradiction of this theory. The trial resulted in a judgment for the appellee. On appeal, the Court held that the appellee had proved a breach of the appellant's express warranty and affirmed the judgment as to liability but remanded the case for a new trial as to damages.

On the question of causation, Judge Marbury, for the Court, said:

> "Appellant's next contention appears to be, although it is not specifically so stated, that the guarantee that the roof would be leakproof should not be enforced against it due to the fact that the leakage, if any, was caused by the settlement of the building, which in turn caused the flashing placed on the roof by it to crack and tear, and that the general contractor, not the roofer, is responsible for damages caused by the settlement. Assuming that the roofer is not responsible, under the written guarantee, for damages due to

settlement, we feel that there was sufficient evidence from which the trial judge could have found that the leakage was caused by defects within the roof rather than the building's supposed settlement and that the appellant was thereby liable." 240 Md. at 632.

In *Correlli,* there was testimony that the leakage of the roof was the result either of defects covered by the guarantee or of the settlement of the building, for which the Court assumed the guarantor was not responsible. The question of causation was held one for the trial judge. In the case before us, the judge found that the damage was due to defects covered by the guarantee rather than to an unknown cause for which the guarantor was not liable. As in *Correlli,* we find that the inference which could reasonably be drawn from the testimony was sufficient to make the issue of causation a question to be determined by the trier of the facts.

In our opinion, the denial of the relief sought by the motion for a directed verdict at the conclusion of the appellees' case was proper. Additional evidence in support of the appellees' theory as to causation was adduced from the appellant during cross-examination. For the same reasons which support the trial judge in his ruling on these motions, there was sufficient testimony for him to have found, as he did, that the collapse of the carport was due to a breach of the appellant's warranty for which the appellant was liable.

*Judgment affirmed; costs to be paid by appellant.*