*Davis v. Regency Lane, LLC*, No. 1747, September Term, 2019, Opinion by Graeff, J.

**NEGLIGENCE — PREMISES LIABILITY — LANDLORD — THIRD PARTY CRIMINAL ACTIVITY — DUTY — CAUSATION**

The owner of property has a duty to use reasonable care to keep common areas safe for invitees. The status of a tenant and a guest of a tenant generally is that of an invitee, but when the property owner alleged that the decedents were using the parking lot for an impermissible purpose, the issue of the decedents' legal status became a dispute of material fact.

A landlord who is aware of criminal activity against persons in the common area has a duty to invitees to take reasonable security measures to eliminate foreseeable harm. Notice of shootings, assaults, and drug activity on the premises, combined with the property manager's concerns about the safety of the property would put a reasonable person on notice that a shooting could occur on the property in the absence of additional security measures. The circuit court erred in finding that summary judgment was proper because Regency owed no duty to the decedents.

The circuit court properly granted summary judgment, however, on the issue of causation. Where appellants provided no evidence regarding the circumstances of the shooting, appellants could not meet their burden to show that any failure by Regency to satisfy its duty to take reasonable security measures (assuming that the decedents were invitees) was the proximate cause of the shooting. When plaintiffs fail to meet their burden of showing "a viable theory of causation" in a negligence case, summary judgment is proper.

Circuit Court for Prince George's County
Case No. CAL1825076

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1747

September Term, 2019

_____

EARL DAVIS, et al.

v.

REGENCY LANE, LLC

_____

Graeff,
Leahy,
Wells,

JJ.

_____

Opinion by Graeff, J.

_____

Filed:  January 28, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On October 30, 2016, at approximately 2:45 a.m., two teenagers, Brian Davis (age 18) and Todd Webb, Jr. (age 14), were shot and killed by an unknown assailant(s) outside an apartment owned by Regency Lane, LLC ("Regency"), appellee, in Capitol Heights, Maryland. On July 18, 2018, Mr. Davis' parents, Earl Davis and Torcelia Hawes, and Todd Jr.'s parents, Todd Webb, Sr. and Lasherne Walker, in their individual capacities and on behalf of their sons' respective estates, sued Regency in the Circuit Court for Prince George's County. The complaint alleged that Regency negligently failed to exercise reasonable care in providing adequate security measures on the premises to protect tenants and invitees from foreseeable criminal activity. The circuit court granted Regency's motion for summary judgment, ruling that appellants failed to present sufficient evidence to support their claims.[1]

On appeal, appellants present a single question for this Court's review, which we have rephrased slightly, as follows:

> Did the circuit court err in finding that Regency did not owe a duty to Brian Davis and Todd Webb, Jr.?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

---

[1] Appellants also named in their complaint "Miles Properties, LLC" and "Miles Properties Inc.," but these parties were never served. The ruling at issue nevertheless is a final judgment. *See Worsham v. Fairfield Resorts, Inc.*, 188 Md. App. 42, 45 n.1 (2009) (Judgment granting defendant's motion to dismiss was final, appealable judgment, even though plaintiff's complaint named a second defendant, because second defendant was never served and the judgment disposed of all claims against all parties who had been served.).

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### I.

### Shootings

On the evening of October 29, 2016, Shanelle Brown hosted a party for approximately 25 family members and friends at her apartment in the Regency Lane apartment complex. Ms. Brown's apartment was located at 6862 Walker Mill Road, on the "backside" of the property.

Mr. Davis, who was not a tenant on the property, arrived with his cousin after the party started at 9:00 p.m. At some point during the party, Todd Webb, Jr., a tenant of the complex who lived with his mother, Ms. Walker, attempted to gain entry to the party, but Ms. Brown did not let him in because she did not know him. Todd Jr.'s whereabouts between the time Ms. Brown turned him away and the shooting were unknown.

At approximately 11:30 p.m., Mr. Davis called his mother, Ms. Hawes, and asked her to call him an Uber to get home. He indicated that he would text her his location, but he never sent a follow-up message. Ms. Hawes called him several times, but he did not answer his phone.

Ms. Brown testified at her deposition that, at approximately 1:00 a.m., Mr. Davis told her that he was leaving, and he went outside to wait for a taxicab. There were a handful

---

[2] Because this is an appeal relating to a ruling on a motion for summary judgment, the facts come from the depositions, documents, and other information obtained in discovery and submitted to the court.

of other people from the party in the parking lot in front of her apartment, but Ms. Brown was not sure what they were doing.

At approximately 2:45 a.m., Ms. Brown heard multiple gun shots in the parking lot outside her apartment window. Mr. Davis, Todd Jr., and Ms. Brown's cousin, Gleason Wood, were shot and killed by an unknown assailant or assailants.[3] Mr. Davis and Todd Jr. did not know one another, and no witnesses were identified to testify based on personal knowledge regarding the circumstances of the shooting.[4]

## II.

### Security/Criminal Activity at Regency Lane Apartments

During discovery, appellants obtained documentation and deposition testimony regarding security at the apartment complex. In Regency's answers to appellants' interrogatories, Regency stated that there were cameras installed on certain areas of the property, but there were no cameras at the back of the complex where the shooting occurred. It also stated that it "maintained halogen flood lights throughout certain parts of the property" and had "no trespassing" and "no loitering" signs posted.

---

[3] Counsel for Regency stated in his argument on the motion for summary judgment that three people were killed, and three additional individuals were shot but survived. Ms. Brown testified at her deposition that Gleason Wood, her cousin, died from his gunshot wounds in December.

[4] Todd Webb, Sr., testified that his son's friends told him that "a fight broke out at the party" and shots were fired, but Todd Sr. did not have personal knowledge of these events. The parties were unable to finish deposing the party's host, Ms. Brown, who defense counsel described as an uncooperative witness who could not be located after her initial deposition.

Regency also contracted with a security firm, Edward Finn, Inc. ("Finn Security"), to provide security services for Regency's 30 apartment buildings. Finn Security assigned one officer to three different properties, including Regency Lane Apartments, for a six-hour shift on varying days and times. The officers sent daily "Police Security Logs" to Arletta Whitaker, the Community Manager at Regency Lane Apartments.

Several logs indicated that a fence surrounding the property was not secure. Ms. Whitaker stated in her deposition that there was a black iron fence surrounding the perimeter of the property, but the gate in the fence behind 6864 was not intended for tenants to use as an entry or exit point, and it had a lock on it.

A log entry for September 27, 2016, stated that the officer on duty stopped a male loitering and ordered him to leave the property. It noted that "[t]he fence to the rear of 6864 Walker Mill was left unsecure." In another log two days later, the officer reported that the "gate to the rear of 6864 [was] open and unsecure," and several males were observed inside 6864 and ran when the officer approached. The log entry stated: "The rear gate must be kept locked to avoid future trespassers." Earlier logs similarly noted that the rear fence gate was left unlocked.

Appellants attached a document to their answers to Regency's interrogatories that listed all the service calls for the apartment complex received by the Prince George's County Police Department from October 14, 2013, to December 10, 2016. This document shows multiple service calls relating to alleged crimes against persons, including assaults,

4

robberies, and fights, as well as five reports of gunshots or shootings and multiple calls reporting drug related activity.[5]

In a series of emails sent to Regency's owner, Avi Bernstein, on October 6, 2016, Ms. Whitaker, the Community Manager at Regency Lane Apartments, expressed concern about trespassers and safety on the property. Ms. Whitaker indicated that there were increased complaints about the "sale of guns and drugs" near building 6864, and when she drove by, there were "quite a few 'new' guys hanging inside 6862 and 6864." She stated that, when the men ignored her explanation of the loitering policy, she called the police, who sent eight police cars in response, but they made no arrests. She then stated: "Can you PLEASE consider installing cameras in the back before something bad happens???? Residents are saying it is really bad in the late evening and night time." She also reported that the flood lights over the rental office and on the "back side of 6840" were not working.

Ms. Whitaker further told Mr. Bernstein: "A camera definitely needs to be put facing 6864. The last row of buildings 6852-6864 are becoming a problem area." Mr. Bernstein asked how a camera would help, to which Ms. Whitaker replied: "It would expose who is selling the drugs and whose household has all this unwanted traffic in the building." She sent another e-mail a few minutes later stating: "I know this Property is never going to be perfect but it is getting bad. These guys are disrespectful and I am almost afraid to work here. The complaints are pretty serious."

---

[5] As discussed, *infra,* Regency argues that there was no evidence that it had knowledge of these incidents. Moreover, it asserts that these records "are incomprehensible and likely inadmissible as evidence for reasons of hearsay and dubious authenticity."

Ms. Whitaker was questioned at her deposition about her concerns. She did not recall the emails, but after they were shown to her, she stated that she did not recall whether Regency installed cameras in response. The cameras had been installed, however, at the time of her deposition.[6] She did not know whether security was patrolling the night of the shooting. Any reports of casualties between 2013 and 2016 would have been reported to her and Mr. Bernstein.

## III.

### Summary Judgment

On July 22, 2019, Regency filed a Motion for Summary Judgment, asserting that there was no genuine dispute of fact, and it was entitled to judgment as a matter of law. Regency argued that appellants failed to establish the elements of a premises liability claim for several reasons.

First, Regency argued that an owner of real property owes a duty of care only to invitees, and appellants failed to demonstrate that the decedents were invitees at the time of the incident. It asserted that appellants presented no witness with personal knowledge of the events leading to the shooting, and the only information provided suggested that the decedents were trespassers because "they were participating in an illegal dice game" and "loitering, in direct contravention of any invitation to the Premises, and of Maryland law." Regency argued that, even assuming the decedents were invitees at some point in time, at

---

[6] Regency stated in its answers to interrogatories that cameras had not been installed at the time of the shooting.

6

the time of the shooting, they had "exceeded the scope of their invitation by engaging in" unauthorized activities.

Second, Regency argued that, even if the decedents were invitees at the time of the shootings, appellants still failed to show that Regency owed a duty to the decedents. It asserted that appellants had not produced "evidence of sufficient prior similar criminal activity on the premises to render the incident in question reasonably foreseeable," and they had not shown evidence of a dangerous physical condition within Regency's control that enabled the criminal activity in this case.

Third, Regency argued that appellants had failed to show how the allegedly inadequate security measures caused the decedents' deaths or how additional security measures could have prevented the shootings. Because appellants had no witnesses with personal knowledge regarding what happened that night, they could not show that any security measures would have had an effect on the shooting.

On August 14, 2019, appellants filed an opposition to Regency's Motion for Summary Judgment. They argued that summary judgment was inappropriate because the question of whether Regency owed a duty to the decedents involved unresolved questions of fact that must be submitted to a jury. They asserted that Regency owed a duty to the teenagers because Todd Jr., was a tenant, and therefore, he could not be a trespasser, and Mr. Davis was an invitee of Ms. Brown. Appellants argued that the only evidence that the decedents were participating in an "'illegal'" dice game was contained in an inadmissible police report. They further argued that Regency had actual notice of the criminal activity occurring near the building, asserting that Ms. Whitaker had emailed the owner of Regency

7

alerting him to numerous complaints of drug and gun sales. Regency, however, offered no evidence that it took increased security measures.

In support of their arguments, appellants attached to their motion an affidavit executed by Michael Hodge, who was proffered as a security expert. Mr. Hodge stated that the apartment building "had a history of violent crime and specifically a history of drugs and crime on the premises in the common areas and that Management was aware of the happenings before the two shooting deaths in this matter." He stated that "security presence in this matter was lacking," and although Finn Security provided "spotted patrols," industry standards dictated that "continuous patrols were needed" under the circumstances to "effectively stop the escalation of crime." Mr. Hodge also noted that proper lighting and CCTV cameras "have proven in the security field to be strong deterrents to crime in common areas and parking lots," and such measures are "affordable" and can be "implemented fairly quickly."

Additionally, appellants attached an April 6, 2019, report prepared by Mr. Hodge, in which he stated that he had reviewed the service call records from the Prince George's County Police Department for the apartment complex, and he determined that the premises had "a history of person-on-person violent crimes." Mr. Hodge also reviewed Prince George's County incident reports and "found that on 4/4/2016 there was a shooting at 6832

8

Walker Mill Road; and on 3/17/16, an assault and battery outside of the building located at

6864 Walker Mill Road, Capitol Heights, MD."[7]

Mr. Hodge's report then stated the following:

The history of violent crimes on the premises serves as the basis of my opinion that Defendant Regency Lane Apartments knew or should have known that a violent attack would occur, especially when security measures on the premises are lacking or inadequate.

Because Regency knew of prior violent crimes occurring outside apartment buildings and in common areas as well as parking areas; there was a responsibility by the Defendant to implement an adequately staffed detail of security personnel to serve as a deterrence and prevention to crime, and enforce the property's policies on loitering, and the likes.

Statements obtained in discovery in this matter indicates [sic] that the attack upon Mr. Davis occurred long enough in time that reasonable personnel would have responded and prevented if they were in a reasonable position to observe and report such crime.

The primary function of security measures is to "observe and report" and upon review of this matter, there are no facts to support a finding that security personnel nor closed circuit surveillance cameras strategically placed was able to fulfilled [sic] these primary functions.

In sum, the report made the following conclusions:

1) Defendant Regency Apartments had a responsibility to address harmful conditions such as violent crimes against persons such as Brian Davis and Webb Jr.
2) Reasonable security measures under the history of crime at Regency Apartments required [a]dequately staffed security personnel and adequate security to observe and report crime upon the premises.
3) Failure to implement adequate security measures like personnel, policies and procedures, and security equipment will allow that type of crime that killed Mr. Davis and Webb Jr.

---

[7] Regency states in its brief that these reports are "not contained in the Record Extract," and we have been unable to locate them in the record. The only information that we have regarding the incident reports is counsel's statement at oral argument that they are different from the police service calls.

4) Failure to implement adequate security measures under the facts and circumstances of this matter falls below the standards of care in the security field and falls below security field guidelines, standards, customs and practices.

Regency filed a reply on September 17, 2019, arguing that there was no dispute of fact because appellants had not produced any evidence regarding the circumstances of the shooting. It asserted that appellants' failure to establish what happened that night precluded them from establishing duty, breach, or causation. Regency also renewed its arguments that it did not owe a duty to the decedents, and appellants failed to establish that additional security measures could have prevented the shooting.

On September 30, 2019, the circuit court held a hearing on the motion for summary judgment. Regency argued that, because there was insufficient evidence to show what happened on the night of the shooting, appellants could not establish the decedents' status on the property at the time of the shooting or the elements of negligence required for their claims. With regard to the question of status, Regency proffered that the police report for the incident stated that the decedents were participating in an illegal dice game in the parking lot, which, if true, would have changed the teenagers' status from invitees to trespassers. Although both parties agreed that the statement in the police report regarding the dice game was inadmissible hearsay, Regency argued that appellants had the burden to establish the decedents' invitee status at the time of incident, and their failure to do so precluded recovery on their claims.

Regency further argued that, even if appellants could establish the decedents' status as invitees, the law provided that a landlord was responsible for the criminal acts of a third

10

party only if it had notice of a dangerous condition and failed to correct it. Regency argued that appellants had failed to establish a pattern of similar criminal activity related to a specific physical condition that Regency allegedly failed to address. Because appellants were unable to produce evidence explaining what happened, they could not point to any one physical condition that potentially could have prevented the crime. For example, in reference to the unsecured gate referenced in Finn Security's logs, appellants did not establish that the gate was unsecured at the time of the shooting or that this physical condition was used to commit the crime. Accordingly, because appellants were not able to establish that what happened was related to a dangerous condition, they could not prove duty or proximate cause, and Regency was entitled to summary judgment.

Appellants argued that Todd Jr. was a tenant of the complex, and therefore, he was not a trespasser, and Regency had "an absolute nondelegable duty to protect its tenants when they are on the property." With respect to the argument that the decedents' status changed to trespassers because they were engaged in an illegal activity, counsel argued that this evidence was inadmissible hearsay, and in any event, because there was no evidence that the dice game was played for money, there was no evidence that they were engaged in an illegal activity. Moreover, the teenagers were not loitering under the definition of that crime in the county code because Mr. Davis was a party attendee who was waiting for his ride home and Todd Jr. was a tenant. Accordingly, appellants argued that Regency owed a duty to both decedents to take reasonable safety measures to protect them in response to the numerous known reports of crime on the premises.

11

With respect to Regency's assertion that they had failed to identify a pattern of similar criminal activity, appellants referred to the shooting documented in Mr. Hodge's report, as well as numerous reports of drug and gun crimes that reasonably could have led to another shooting. They asserted that Regency had a duty to protect tenants and their invitees, and it breached that duty when it failed to take additional security measures, such as hiring more security guards, putting up security cameras, or securing the gate, to protect the decedents from known criminal activity. Counsel argued that summary judgment was inappropriate because there were numerous disputes of material fact, including issues regarding the decedents' status as invitees or trespassers, whether Regency had knowledge of the prior criminal incidents, and causation.

On October 11, 2019, the court issued a written opinion and order granting summary judgment in favor of Regency. The court began by listing the undisputed facts, including that appellants had not identified any witness with personal knowledge of the circumstances surrounding the shooting.

The court initially addressed the issue of the decedents' status. It stated that the question whether their status changed from invitees to trespassers at the time of shooting was a dispute of material fact, and therefore, Regency's "motion as to the trespasser status is denied."

The court, however, ultimately granted the motion for summary judgment. It found that appellants had failed to identify a dangerous physical condition that existed, that the shooting was a result of that condition, or that past criminal activities alerted Regency to the foreseeability of the deadly shootings. The court found Mr. Hodge's affidavit regarding

12

the criminal activity and security measures on the property to be "simply conclusory statements." It noted that, although counsel stated in argument that "there were hundreds of calls for service" on the property during a three-year period, those calls for service were "not necessarily evidence of criminal activities because they include[d] various calls for assistance unrelated to alleged criminal activity."

The court noted that, in *Rhaney v. University of Maryland Eastern Shore*, 388 Md. 585 (2005), the Court of Appeals stated that "criminal acts occurring in the common areas themselves do not constitute dangerous or defective conditions," and a duty arises only "if a dangerous and defective condition exists in the common areas that the landlord knows or should have known and foresees the harm." To prove liability, appellants were required to present evidence to show that a dangerous physical condition existed and that the harm was a result of that condition, which the appellants failed to do.

The court explained:

> Here, the Plaintiffs have not identified any physical conditions or particular defect that permitted the shooting to occur. While the Plaintiffs, at oral argument, raised the issue of lighting, Plaintiffs did not provide evidence to show that lighting did or did not exist at the location of the shooting or articulate that the light in the area of the shooting was functioning or not. The Defendant is correct that there is no evidence to consider because there are no witnesses to testify as to the shooting or other evidence as to the circumstances of the shooting. To determine liability, a fact finder would need to know whether the decedents were innocent by-standers to criminal activities or were they themselves participants in the criminal activities or they were targeted for reasons other than their location at the time of the shooting. Without evidence as to the shooting itself, a fact finder could not determine if any physical defect contributed to the shooting; and whether the Defendant had actual or constructive notice of the physical defect and failed to take reasonable steps to prevent the actual shooting.

*       *       *

13

Defendant's Motion for Summary Judgment is granted because there are no genuine disputes of material facts since there are no available witnesses or physical evidence to the actual shooting and the Plaintiffs cannot provide evidence to support their theory of liability. Discovery for all factual evidence closed on September 10, 2019. As a matter of law, without any facts or evidence, Defendant cannot be held liable for the shooting. Plaintiffs cannot prove past criminal activities where a physical defect facilitated similar criminal activities that would have provided Defendant with reasonable notice. Here, we have a very heartbreaking event, the taking of the lives of two young men; however, the Defendant is not an insurer against third party criminal acts. Defendant cannot be held responsible for reasonably foreseeing the shooting or stand liable for the consequences.

This appeal followed.

## STANDARD OF REVIEW

Maryland Rule 2-501(f) provides that a court may grant summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." The Court of Appeals has explained the relevant standard to be applied in reviewing a grant of a motion for summary judgment, as follows:

> We review a grant of summary judgment as a matter of law. *Eng'g Mgmt Servs. v. Md. State Highway Admin.*, 375 Md. 211, 229, 825 A.2d 966, 976 (2003). "The standard for appellate review of a trial court's grant or denial of a summary judgment motion is whether the trial court was legally correct." *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 638, 679 A.2d 540, 542 (1996) (citation omitted). Thus, we conduct an independent review of the record to determine whether a genuine dispute of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 14, 852 A.2d 98, 105–06 (2004). "We review the record in the light most favorable to the non-moving party and construe any reasonable inferences which may be drawn from the facts against the movant." *Id.* at 14, 852 A.2d at 106 (citation omitted).

*Md. Cas. Co. v. Blackstone Intern. Ltd.*, 442 Md. 685, 694 (2015).

14

"'[T]o defeat a defendant's motion for summary judgment, the opposing party must show that there is a genuine dispute as to a material fact by proffering facts which would be admissible in evidence." *Hamilton v. Kirson*, 439 Md. 501, 522 (2014) (quoting *Beatty v. Trailmaster Prod., Inc.*, 330 Md. 726 (1993) (internal citations omitted)). General allegations that "do not show facts in detail and with precision are insufficient to prevent summary judgment." *Id.* "There must be evidence upon which the jury could reasonably find for the plaintiff." *Id.* at 523.

## DISCUSSION

### I.

### Parties' Contentions

Appellants contend that the circuit court erred in granting summary judgment in favor of Regency, arguing that the court's determination that Regency did not owe a duty to the decedents was improper. Initially, they argue that there was a genuine dispute of fact regarding the status of the decedents at the time of the shooting. They further assert that the undisputed facts demonstrate that a dangerous condition existed on the property, that Regency had knowledge of the potential for the shooting, and that the deaths were a foreseeable result of the escalating crime and Regency's inaction. They argue that knowledge of increasing criminal activity on the property, "followed by a failure to address it[,] creates a 'dangerous condition,'" and the landowner has a duty to take reasonable steps to eliminate the dangerous condition. Appellants argue that a landlord has a duty to control conditions on its property that create an opportunity for criminal activity to take place, but

15

Regency did not present evidence that it took measures to eliminate known crime, and therefore, the shooting was foreseeable.

Regency contends that the circuit court properly granted its motion for summary judgment. It argues that, as a result of appellants' failure to produce any evidence of what occurred prior to and at the time of the shooting, appellants could not meet their burden to show: (1) that the decedents were invitees at the time of the shooting; (2) that Regency was "on notice of an unreasonably dangerous physical condition created by a history of similar crimes tied to a physical condition of the property"; or (3) that the shooting would not have happened if Regency had addressed an identified, dangerous condition.

Regency argues that it had a duty to the decedents only if appellants met their burden to show that the decedents were invitees at the time of the incident, and because there was no evidence regarding the circumstances surrounding the shootings, appellants could not meet that burden. Regency further asserts that appellants failed to provide legally sufficient evidence to show that it knew or should have known of similar prior criminal activity on the property, and therefore, the shootings were not a foreseeable harm that Regency had a duty to prevent. It argues that, although past criminal activity on the property can create a duty, it "must be similar in nature to the crime at issue," and prior criminal activity alone is not a dangerous condition giving rise to a duty. Here, it asserts that, even if Regency had been on notice of the incidents in Mr. Hodge's report, the crimes were not sufficiently similar to a "triple homicide."

Moreover, Regency contends that, even if appellants produced sufficient facts to survive summary judgment on the issue of duty, they did not provide evidence to show that

16

any of the alleged dangerous conditions, such as the unsecured gate lock, contributed to or enabled the commission of the third-party criminal act. Accordingly, Regency argues that the circuit court correctly found that appellants failed to establish that the "inadequate security measures caused the decedent's deaths." It asserts that it would be impossible for appellants to show that any particular security measure was insufficient because they provided no evidence as to what occurred. Thus, even if appellants were able to show that Regency had a duty, they would not be able to prove proximate causation.

## II.

### Analysis

In a negligence action, a plaintiff bears the burden of proving: "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of that duty." *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 469 Md. 704, 727 (2020) (quoting *Rowhouses, Inc. v. Smith*, 446 Md. 611, 631 (2016)). *Accord Rhaney*, 388 Md. at 596 (The plaintiff has the burden to produce "evidence of a duty that was breached and proximately caused the injuries sustained."). This burden cannot be met "by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value." *Shafer v. Interstate Auto. Ins. Co.*, 166 Md. App. 358, 376 (2005) (quoting *Brock v. Sorrell*, 15 Md. App. 1, 6 (1972)), *cert. denied*, 393 Md. 162 (2006). "[I]f the plaintiff does not, in the first instance, introduce evidence on each element which is sufficient to

17

warrant a finding in his favor, he will lose his case at the hands of the court (by nonsuit, directed verdict, or the like)." *Macias v. Summit Mgmt. Inc.*, 243 Md. App. 294, 316 (2019) (quoting *Pratt v. Md. Farms Condo. Phase 1, Inc*., 42 Md. App. 632, 640 (1979)).

We address first Regency's contention that the circuit court properly granted summary judgment in its favor because appellants failed to meet their burden to show the first requirement, that it had a duty to the decedents. The question whether one person owes a duty to another generally is a legal determination that is for the court, as opposed to a jury, to decide. *Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship*, 375 Md. 522, 536 (2003). A duty is defined as an obligation "to conform to a particular standard of conduct toward another." *Id.* (cleaned up). When the question whether a legal duty exists depends on a determination regarding a dispute of material fact, however, the facts should be determined by the jury. *Corinaldi v. Columbia Courtyard Inc.*, 162 Md. App. 207, 218 (2005).

In a premises liability case, the duty owed by the owner of the property to someone on the property begins with an analysis of "the latter's legal status on the property at the time of the incident." *Richardson v. Nwadiuko*, 184 Md. App. 481, 489 (2009). *Accord Six Flags America L.P. v. Gonzalez-Rodriguez*, No. 1620 September Term, 2019, 2020 WL 7392793, 248 Md.App. 569 (filed December 16, 2020). As this Court has explained:

> The highest duty is that owed to an invitee; it is the duty to "use reasonable and ordinary care to keep [the] premises safe for the invitee and to protect [the invitee] from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for [the invitee's] own safety will not discover." *Rowley,* 305 Md. at 465, 505 A.2d 494 (citations omitted). By contrast, the landowner or occupier owes no duty to licensees or trespassers, except to abstain from willful or wanton misconduct or entrapment.

18

*Wells*, 120 Md. App. at 710, 708 A.2d 34 (citing *Mech v. Hearst Corp.*, 64 Md. App. 422, 426, 496 A.2d 1099 (1985)).

*Richardson*, 184 Md. App. at 489 (quoting *Deboy v. City of Crisfield*, 167 Md. App. 548, 555 (2006)).

Here, Todd, Jr. was a tenant of the apartment complex, and Mr. Davis entered the apartment complex as a guest of a tenant. Because they were in the parking lot, a common area of the premises, their legal status generally would be that of an invitee, resulting in Regency owing them a duty to exercise reasonable care for their safety. *See Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.*, 351 Md. 544, 554 (1998) (The duty to maintain areas in a reasonably safe condition applies to the tenant and "the members of his family, his guests, his invitees, and others on the land in the right of the tenant.") (quoting *Landay v. Cohn,* 220 Md. 24, 27 (1959)); *Shields v. Wagman*, 350 Md. 666, 674–681 (1998) (Landlord has duty to tenants and their invitees to exercise reasonable care for safety in the common areas.). *See also Macias*, 243 Md. App. at 327–28 (Condominium owners and their guests, similar to tenants, "occupy the legal status of invitees when they are in the common areas of the complex.").[8]

---

[8] In *Shields v. Wagman*, 350 Md. 666, 674 n.3 (1998), the Court of Appeals noted that it had adopted the following approach set forth in the *Restatement (Second) of Torts* § 360 (1965):

> A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered

As Regency notes, however, an invitee is only an invitee "to the extent of their invitation." *Howard Cty. Bd. of Educ. v. Cheyne*, 99 Md. App. 150, 166, *cert. denied*, 335 Md. 81 (1994). A landlord's "responsibility for the reasonably safe condition of premises retained under his control is limited to the confines of his invitation to use them, express or implied. It does not extend to the use of such premises for an unintended purpose." *Landay*, 220 Md. at 28.

Regency contends that, even if the decedents were invitees on the property at some time, there was no evidence that, at the time of the shooting, the decedents were using the parking lot for its permissible purpose, ingress and egress. It asserts that, "[d]espite the complete absence of factual information concerning the events giving rise to the shooting deaths," the facts suggest that the decedents were loitering at the time, and thereby trespassing.

Regency is correct that a person's status on another person's property can change. As Judge Leahy explained in this Court's opinion in *Macias*, 243 Md. App. at 324:

> [A]n entrant's legal status is not static and may change through the passage of time or through a change in location. . . . [and] an entrant can lose invitee status if he or she remains on the premises beyond a specified time or enters an area that is off limits to guests and the general public.

Although the status of an entrant on property generally is a question of law for the court, *id.* at 315, that is the case only when there is no dispute about the facts. Where there

the condition and the unreasonable risk involved therein and could have made the condition safe.

is evidence to support an argument that the injured party exceeded the scope of the invitation on the premises, the issue is one for the jury. *Cheyne*, 99 Md. App. at 166–69.

Here, the evidence supports a conclusion, as a matter of law, that the decedents, as a tenant and a guest of a tenant, initially were on the apartment complex premises as invitees. To the extent that Regency is arguing that, at the time of the shooting in the parking lot, the decedents had exceeded the scope of their invitation and had lost their status as invitees, the circuit court was correct in its conclusion that the issue of the decedents' legal status at the time of the shooting involved a dispute of material fact.[9] The circuit court properly declined to grant summary judgment on the ground that Regency did not have a duty to the decedents because they were trespassers at the time of the shooting.

The court nevertheless granted summary judgment because, even if the decedents were invitees at the time of the shooting, appellants failed to present evidence to show: (1) that a dangerous condition existed that rendered the shootings a foreseeable harm; and (2) that the deaths resulted from that condition. The court's ruling in this regard addressed the elements of duty and proximate cause. We will address each, in turn.

As we discussed *supra*, once we get past the legal status of the decedents and assume that they were invitees, the law is clear that Regency had a duty to exercise reasonable care for their safety in the parking lot. *See Shields*, 350 Md. at 676. The question then becomes

---

[9] We note that, to the extent that Regency's contention in this regard is based on statements in a police report, both sides agree that such statements constitute inadmissible hearsay. Regency appears to argue, however, that the presence of several teenagers in the parking lot at 2:45 a.m. supported its contention that the decedents were not there as invitees.

whether that duty encompassed measures to protect against the shooting that occurred. *See Rhaney*, 388 Md. at 597 ("Only after establishing that a duty does indeed exist must we consider *what* that duty is and whether sufficient evidence exists to prove that a defendant, by action or inaction, breached that duty.").

The Court of Appeals addressed a landlord's duty as it relates to criminal activity by third parties in *Scott v. Watson*, 278 Md. 160, 167 (1976). Scott was shot and killed in a parking garage in his apartment building. *Id.* at 162. The Court held that, generally, there is "no special duty imposed upon the landlord to protect his tenants against crimes perpetrated by third parties on the landlord's premises," noting that a landlord is not an "insurer of his tenants' safety." *Id.* at 166. The landlord does have a duty, however, to exercise reasonable care, under the circumstances, for the tenants in areas within the landlord's control, such as common areas. *Id.* at 167. "If the landlord knows, or should know, of criminal activity against persons or property in the common areas, he then has a duty to take reasonable measures, in view of the existing circumstances, to eliminate the conditions contributing to the criminal activity." *Id.* at 169. The duty in that situation is to provide reasonable security measures to eliminate foreseeable harm. *Hemmings*, 375 Md. at 540–41.

The Court of Appeals has explained that, for a landlord to have a duty to provide reasonable security measures, two things must be shown. First,

> [k]nowledge is essential to establishing a landlord's duty under *Scott*. Once a landlord has knowledge or should have knowledge that criminal activity on the premises has created a dangerous condition, the landlord must take reasonable measures to eliminate or, in other words, correct the condition contributing to the criminal activity.

22

*Hemmings*, 375 Md. at 540–41. *Accord Troxel v. Iguana Cantina, LLC*, 201 Md. App. 476, 497 (2011) (Landowner has duty "to eliminate conditions that contribute to criminal activity if the landowner had prior knowledge of *similar criminal activity*—evidenced by past events—occurring on the premises."), *cert. denied*, 424 Md. 630 (2012).

Second, the particular harm must be foreseeable, i.e., "a person of ordinary prudence should realize that the condition of which he or she has notice, enhances the likelihood that the harm will occur." *Hemmings*, 375 Md. 541. In other words, "a landlord of ordinary intelligence, based on the nature of the past criminal activity, should have foreseen the harm suffered." *Id.* at 546. If the harm is not the type that would be associated with the known criminal activity on the premises, there is no duty to take measures to eliminate that harm. *Id.* at 541.

Here, the circuit court found that appellants failed to present evidence of the existence of a dangerous physical condition or that past criminal activities alerted Regency to the foreseeability of the shooting. Appellants contend that the circuit court erred in this finding. They assert that Regency had knowledge of increasing criminal activity on the property, and Regency's failure to address it created a dangerous condition. They assert that conditions in the month before the shooting, including the lack of a camera and a frequently broken gate, contributed to rising gun and drug sales, and the deaths were a foreseeable result of the escalating crime. They further assert that Regency offered no evidence that it increased security or took other steps "to eliminate the known crime."

23

Regency contends that the circuit court properly found that appellants failed to show that it had a duty to mitigate criminal activity because appellants did not show that it "knew or should have known of similar prior criminal activity on the premises," which was necessary to show that the shooting was foreseeable. It relies on *Moore v. Jimel, Inc.*, 147 Md. App. 336, 347–49 (2002), and *Smith v. Dodge Plaza Ltd. P'ship*, 148 Md. App. 335, 345–46 (2002), *cert. denied*, 374 Md. 84 (2003), in support of its contention in this regard.

In *Moore*, 147 Md. App. at 337, a woman was assaulted in the restroom of a bar, and she sued the bar for negligently failing to provide security on the premises. This Court upheld the grant of summary judgment in favor of the defendant because the woman failed to show any evidence that a crime previously had been committed against a customer, and therefore, "there was no foreseeability of risk so as to create a special duty." *Id.* at 349.

In *Smith*, 148 Md. App. at 337, a patron at a nightclub was stabbed on the premises. Smith produced no evidence that the landowner had actual notice of prior criminal assaults on the premises, *id.* at 340, but Smith produced prior incident reports and other evidence of prior assaults that occurred, *id.* at 343. This Court noted that "constructive notice may, depending on the facts, be sufficient to include protection from criminal violence within a landlord's duty to use reasonable care to protect tenants from injury in the common areas." *Id.* a 345. We held, however, that the evidence presented, which included only two instances of violence within the nightclub within the two years prior to the stabbing, neither of which involved a weapon, was legally insufficient, by itself, to put the landowner "on constructive notice of a danger to patrons of criminal injury within [the nightclub] beyond that normally encountered in urban society." *Id.* at 346.

24

Here, by contrast, there was evidence of repeated instances of dangerous criminal activity on the premises. The calls for service to the police regarding the apartment complex in the three years prior to the shooting included assaults and fights, reports of shootings and gunshots, and multiple calls reporting drug-related activity. The property manager sent several emails to Regency in the weeks before the shooting detailing her concern about the safety of the property, including increased complaints about the "sale of guns and drugs." She requested the installation of cameras "before something bad happens," explaining that the property was "getting bad," and she was "almost afraid to work here."

This evidence was sufficient for a fact finder to conclude that Regency knew or should have known that there was a dangerous condition on the premises. *See Troxel*, 201 Md. App. at 498–99 (based on police reports of prior assaults and other violent crimes on the premises, a fact finder could infer that appellees had knowledge of a dangerous condition and had an obligation to take steps to provide a safe environment). Accordingly, there was a dispute of material fact regarding whether Regency had knowledge that criminal activity on the premises created a dangerous condition.

Even if Regency had the requisite notice of the criminal activity occurring in the common areas of the apartment complex, however, its duty was only to provide reasonable security measures to eliminate foreseeable harm. *Hemmings*, 375 Md. at 540–41. With respect to foreseeability, the circuit court found, as a matter of law, that the appellants did not produce evidence that the prior criminal activity alerted Regency to the foreseeability of the deadly shootings.

25

Initially, we note that, although foreseeability in some contexts, such as proximate cause, is ordinarily a question of fact, *see Little v. Woodall*, 244 Md. 620, 626 (1966), other courts have held that "foreseeability in defining the boundaries of a duty" is a question of law, *First American Bank & Trust, N.A. v. Farmers State Bank of Clinton*, 756 N.W. 2d 19, 26 (S.D. 2008) (quoting *Kuehl v. Horner (J.W.) Lumber Co.*, 678 N.W.2d 809, 812 (S.D. 2004)). *Accord Meyers v. Ferndale Sch. Dist.*, 457 P.3d 483, 488 (Wash. Ct. App.) ("When foreseeability is a question of whether a duty exists, it is a question of law."), *review granted*, 466 P.3d 769 (Wash. 2020). The Supreme Court of Oklahoma has explained the different analysis, as follows: "[f]oreseeablilty as an element of duty of care creates a 'zone of risk' and is a minimum threshold legal requirement for opening the courthouse doors," whereas "[f]oreseeability as an element of proximate cause is a much more specific factual requirement that must be proved to win the case once the courthouse doors are open." *Delbrel, v. Doenges Bros. Ford, Inc.*, 913 P.2d 1318, 1322 (1996).

We agree that the issue of foreseeability in the context of the duty of care is a question of law. Accordingly, the circuit court properly addressed this issue as a matter of law.

We disagree, however, with the circuit court's legal conclusion that the shootings in this case were not foreseeable. If Regency had knowledge of the service calls to the police, which indicated reports of shootings, assaults, and drug activity, this knowledge, combined with the reports and concerns shared by the property manager, was sufficient to put a person of ordinary intelligence on notice that a shooting could occur on the property in the absence of additional security measures. Accordingly, if the trier of fact found that

26

Regency had the requisite knowledge, the shootings were a foreseeable harm, and the circuit court erred in determining, as a matter of law, that Regency did not owe a duty to the decedents to take reasonable security measures.

Our conclusion that the circuit court erred in granting summary judgment on the ground that appellants failed to show that Regency had a duty to the decedents, however, is not the end of the inquiry. Although appellants limited their argument to the issue of duty, as we have indicated, the circuit court granted summary judgment on an additional ground, i.e., that appellants had not shown that a dangerous condition contributed to the shooting. We agree with that conclusion and hold that, where appellants produced no evidence regarding the circumstances of the shooting, appellants could not meet their burden to show that any failure by Regency to satisfy its duty to take reasonable security measures was the proximate cause of the shooting.

As the Court of Appeals noted in *Scott*, 278 Md. at 171, a duty and breach does not establish a cause of action for negligence; proximate cause also must be shown. *Accord Rhaney*, 398 Md. at 596–97 (Plaintiff had the burden to show that breach of duty proximately caused injury.). "[T]o be a proximate cause of an injury, 'the negligence must be 1) a cause in fact, and 2) a legally cognizable cause.'" *Macias*, 243 Md. App. at 317 (quoting *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 156 (1994)). We do not need to address the second prong of this analysis, however, because appellants failed to produce any evidence that would satisfy the first prong.

"Causation-in-fact concerns the threshold inquiry of whether a defendant's conduct actually produced an injury." *Macias*, 243 Md. App. at 318 (quoting *Troxel*, 201 Md. App.

27

at 504). Where the breach of duty is the failure of a landlord to provide security measures against known criminal activity, proximate cause will be found if "the breach enhanced the likelihood of the particular activity which occurred." *Scott*, 278 Md. at 173. *Accord Troxel*, 201 Md. App. at 505 ("[C]ausation-in-fact may be found if it is more likely than not that the defendant's conduct was a substantial factor in producing the plaintiff's injuries.").

We acknowledge that proximate cause ordinarily is a question of fact. *Kiriakos v. Phillips*, 448 Md. 440, 470 (2016). When plaintiffs fail to meet their burden of showing "a viable theory of causation" in a negligence case, however, summary judgment is proper. *Hamilton*, 439 Md. at 546.

Here, appellants produced no evidence regarding the circumstances of the shooting. No witness was identified who had personal knowledge of how the shooting occurred or what precipitated it. Appellants produced no evidence of the identity of the shooter or shooters or whether they were trespassers, tenants, or someone else authorized to be on the premises. There was no evidence whether the gate was broken on the night of the shooting or whether the shooter(s) entered the premises through that gate. *See Leslie G. v. Perry & Assoc.*, 50 Cal.Rptr.2d 785, 792–94 (Cal. Ct. App. 1996) (Summary judgment was proper where plaintiff argued that landlord's failure to fix a broken gate caused her rape, but there was no evidence that her assailant entered or departed through the broken gate; the possibility that he may have entered through the gate was insufficient to survive summary judgment.).

Appellant produced no evidence of the timeframe during which the events leading up to the shooting took place, whether it happened quickly or over a period of time. There

28

was, therefore, no evidence to support a finding that extra security patrols or other security measures could have prevented the shooting.

Proof of causation cannot be based on mere speculation. *See Rowhouses* 445 Md. at 635 ("[C]ausation evidence that is wholly speculative is not sufficient" to justify sending a case to the jury.) (quoting *Dow v. L& R Prop., Inc.*, 144 Md. App. 67, 75 (2002)). To survive a motion for summary judgment, there must be evidence, not conjecture, that a breach of the landlord's duty caused the harm. *See Ham v. Equity Residential Prop. Mgmt. Servs., Corp.*, 315 S.W.3d 627, 631–34 (Tex. Ct. App. 2010) (Summary judgment was properly granted because there was no evidence that the apartment complex's alleged negligence was the cause in fact of the guest's injuries.).

Based on the evidence here, or the lack thereof, the circuit court properly determined that the appellants failed to show that "inadequate security measures caused the decedents' deaths." Accordingly, there was no triable issue of material fact to present to a jury on the issue of proximate cause, and the court properly granted summary judgment in favor of Regency.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

29